

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,873 & AP-76,874

### EX PARTE MICHAEL GEORGE LAHOOD, Applicant

### ON APPLICATIONS FOR A WRIT OF HABEAS CORPUS
### CAUSE NOS. 960494-A & 960495-A IN THE 185TH DISTRICT COURT
### FROM HARRIS COUNTY

HERVEY, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion in which MEYERS, J., joined. MEYERS, J., concurred in the result.

### O P I N I O N

Applicant, Michael LaHood, was convicted of aggravated kidnapping and aggravated sexual assault. On direct appeal, the Fourteenth District Court of Appeals affirmed his convictions in a published opinion. *LaHood v. State*, 171 S.W.3d 613 (Tex. App.—Houston [14th Dist.] 2005, pets. ref'd). We subsequently refused his petitions for discretionary review. Applicant now files these applications for a writ of habeas corpus alleging, in part, that he received ineffective assistance of counsel because his trial

counsel failed to investigate his mental-health history, and if she had, there was a reasonable probability that the outcome of his proceeding would have been different. The trial court entered findings of fact and conclusions of law recommending that we deny relief. We will deny relief.

## I. PROCEDURAL HISTORY

Applicant committed aggravated kidnapping and aggravated sexual assault on or about September 3, 2003. He was found guilty of both charges by a jury. His punishment was assessed at thirty years' imprisonment in each case to run concurrently. On direct appeal, the Fourteenth District Court of Appeals affirmed the judgment of the trial court. *LaHood*, 171 S.W.3d at 625.

On May 7, 2007, Applicant filed the instant applications for a writ of habeas corpus, in which he claimed that his trial counsel was ineffective.[1] The State filed its answer and argued that, to resolve Applicant's claims, more information was needed from Applicant's trial counsel regarding her "pre-trial investigative efforts, strategic decisions, and confidential communications with Applicant." The habeas court agreed and entered an order designating the issues and directing Applicant's trial counsel, Leah Borg, to file

---

[1]Although Applicant filed an amended application on May 25, 2007, in which he raised additional claims of ineffective assistance of counsel, his remaining issues were denied by this Court. *Ex parte LaHood*, Nos. AP-76,873 & AP-76,874, 2012 WL 3996712, at *1 (Tex. Crim. App. Sept. 12, 2012) (per curiam) (not designated for publication).

the proposed affidavit. Ms. Borg filed her first affidavit on October 17, 2007.[2] Applicant

then filed an affidavit by J. Ray Hays, Ph.D., J.D., a mental-health expert, to support

Applicant's claim that his counsel should have been aware that he was incompetent to

stand trial. In addition, Applicant's father, Colonel (Ret.) George A. LaHood, filed an

affidavit disputing certain statements made by trial counsel in her initial affidavit. A few

weeks later, Applicant filed an affidavit from mental-health expert Victor R. Scarano,

M.D., J.D., which addressed trial counsel's affidavit and Applicant's competency. Trial

counsel then filed her second amended affidavit (her third affidavit chronologically) to

respond to claims raised by Applicant in his amended application. Finally, Applicant filed

additional supporting affidavits from another criminal-defense attorney, the custodian of

records for the Harris County District Clerk's Office, Applicant's former wife, Elizabeth

Patterson, and the custodian of records for the Harris County Sheriff's Office.

On April 19, 2009, the habeas court recommended denying Applicant's claims for

relief. However, we remanded the applications for additional fact-finding and to

supplement the record. *See Ex parte LaHood*, Nos. WR-72,580 & WR-72,580-02, 2011

WL 2369392, at *1 (Tex. Crim. App. June 8, 2011) (per curiam) (not designated for

publication). Specifically, we remanded for further fact-finding regarding whether

Applicant was able to make an informed, knowing, and intelligent decision to testify and

to supplement the record "with the notes trial counsel references in her affidavits that she

---

[2]Trial counsel submitted a second, identical affidavit because her original affidavit was filed in only one of the two cause numbers.

states Applicant made during trial."[3] *Id.* If those notes could not be provided, the trial

court was directed to make factual findings regarding the reasons why. *Id.* On remand,

trial counsel filed a fourth affidavit responding to this Court's remand order, the State

filed a brief, State's Supplemental Answer After Remand,[4] and Applicant filed a brief

objecting to the State's supplemental answer and a second affidavit, in which Dr. Scarano

reviewed documentation made available to him after submission of his original affidavit.

On November 17, 2011, after considering the additional information, the habeas court

again recommended denying relief.

Based on the additional findings of fact and conclusions of law made by the trial

court, we filed and set the applications and ordered the parties to brief the following three

issues:

> 1. Whether trial counsel, under *Strickland v. Washington*, 466
> U.S. 668 (1984), was deficient for not bringing to the trial
> court's attention, either before or during trial, evidence of
> Applicant's alleged incompetency to stand trial.
>
> 2. Assuming trial counsel was deficient for failing to alert the
> trial court to the alleged incompetency, whether Applicant
> was harmed by counsel's actions under *Strickland v.
> Washington*, 466 U.S. 668 (1984), and how the determination

---

[3]According to trial counsel, the described notes written by Applicant spanned several pages that "were clear and precise as to how Applicant was responding to the testimony at trial and what issues he wanted addressed."

[4]The State's supplemental brief was filed after it acquired four letters written by Applicant from jail. Applicant objects to the exhibits because they have not been authenticated and they pertain to his competency in 2011, but the State argues that the letters are relevant to show Applicant's capability to manipulate people.

of harm should be made considering this Court's holdings in
*Sisco v. State*, 599 S.W.2d 607 (Tex. Crim. App. 1980),
*Barber v. State*, 737 S.W.2d 824 (Tex. Crim. App. 1987),
*Williams v. State*, 663 S.W.2d 832 (Tex. Crim. App. 1984),
and their progeny.

3. Assuming deficient performance and resulting harm are
shown under *Strickland v. Washington*, 466 U.S. 668 (1984),
whether the proper remedy is to order a retrospective
competency inquiry or to grant a new trial. *See*, *e.g.*, *Barber v.*
*State*, 737 S.W.2d 824 (Tex. Crim. App. 1987); *Caballero v.*
*State*, 587 S.W.2d 741 (Tex. Crim. App. 1979).

*Ex parte LaHood*, Nos. AP-76,873 & AP-76,874, 2012 WL 3996712 (Tex. Crim. App.

Sept. 12, 2012) (per curiam) (not designated for publication).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant has a Sixth Amendment right to effective assistance of counsel. U.S.

CONST. amend. VI; *see Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective-

assistance-of-counsel claims are cognizable on habeas review, and to determine whether

to grant habeas relief for ineffective assistance of counsel, Texas courts apply the

standard set forth in *Strickland*. *See Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim.

App. 2011); *Hernandez v. State*, 726 S.W.2d 53, 55–56 (Tex. Crim. App. 1986). The

*Strickland* standard requires that an applicant establish two components by a

preponderance of the evidence: (1) deficient performance of trial counsel and (2) harm

resulting from that deficiency sufficient to undermine confidence in the outcome of the

trial. *Strickland*, 466 U.S. at 687. The proper standard of review for claims of ineffective

assistance of counsel is whether, considering the totality of the representation, counsel's

performance was ineffective. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)).

An attorney's performance is deficient when it falls "below an objective standard of reasonableness" under prevailing professional norms and according to the necessity of the case. *Ex Parte Moore*, 395 S.W.3d 152, 156–57 (Tex. Crim. App. 2013). We refer to standards published by the American Bar Association and other similar sources as guides to determine prevailing professional norms. *Strickland*, 466 U.S. at 688–89 (citing ABA STANDARDS FOR CRIMINAL JUSTICE (2d ed. 1980)). However, publications of that sort are only guides because no set of detailed rules can completely dictate how best to represent a criminal defendant. *See id.* at 688–89. We begin the analysis of counsel's performance with a strong presumption that her actions fell within the wide range of reasonable professional assistance. *Id.* at 689; *see Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013).

One necessary facet of professional assistance is the investigation of the facts and law applicable to a case. Counsel has a duty in every case to make a reasonable investigation or a reasonable decision that an investigation is unnecessary. *Strickland*, 466 U.S. at 691; *see Ex parte Imoudu*, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009). "When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Martinez*, 195

S.W.3d 713, 721 (Tex. Crim. App. 2006).

An attorney's deficient performance prejudices an accused when there is a reasonable probability that the outcome of the trial would have been different but for counsel's deficiency. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). We have defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

### A. Trial counsel was deficient when she made an unreasonable decision not to investigate Applicant's mental-health history.

Applicant argues that his trial counsel observed evidence of his lack of mental health before trial, at his trial, and during the sentencing phase. He contends that his trial counsel's failure to follow up on the various indicia of his alleged incompetency fell below prevailing professional standards and, as a result, her performance was constitutionally deficient. We agree.

Relevant American Bar Association standards state that "[d]efense counsel should consider all procedural steps which in good faith may be taken, including, obtaining psychiatric examination of the accused when a need appears . . . ." ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION AND DEFENSE FUNCTION 4-3.6 (3d ed. 1993). This standard, though not binding, appears to comport with the applicable standard at the time of Applicant's trial—whether defense counsel had or should have had a *bona fide* doubt as to Applicant's competency. Standard 4-4.1, titled "Duty to Investigate," states in part, that "[d]efense counsel should conduct a prompt investigation" and explore all avenues

leading to relevant facts of the case. *Id.* at 4-4.1.

In trial counsel's affidavits, she described her client as having a "misogynistic attitude with a need to dominate and exercise control over women . . . ." She also stated that Applicant is a malingerer and "engaged in . . . antics designed to create the illusion of incompetency, but which appeared to be nothing more than an act." To support her assertions, she cites to pages of cogent notes written by Applicant during trial, but she can no longer locate the notes in question. She does acknowledge, however, that Applicant told her he was bipolar and was prescribed Zoloft, Risperadol, and Zyprexa. She also stated that a mental-health pretrial screening sheet for Applicant related to a prior sexual-assault case indicated that he had an alcohol dependency problem, was bipolar, and was prescribed Lithium, Prozac, and Lidicin. Although the record does not reveal when that screening took place, it shows that Applicant has had previous mental-health issues. Moreover, trial counsel admits that Applicant was on medications for his mental illness and that, without his medication, he *could* become incompetent:

> These medications are what I have observed in the past to be prescribed to persons who have been found "incompetent, but who have a substantial probability of regaining competency" through the use of medications. The fact that Applicant was taking these medications I believed was further support to my conclusion that Applicant was legally competent.

First Amended Affidavit Trial Counsel at 3.

In addition, Applicant's father stated in his affidavit that trial counsel never called him, and he didn't speak with her for the first time until he called her about a week before

trial. He explained that, during their conversation, he told her about his son's mental illness and need for his medications. But trial counsel stated that she did not recall any family members telling her that "Applicant had any mental-health history that would make him legally incompetent, even though he may have mental health issues." In addition to Applicant's father, Applicant's ex-wife, Elizabeth Patterson, stated that she told trial counsel that she had important information concerning Applicant's mental-health history, including how his illness and drugs and alcohol have affected him. She also asserts that trial counsel never called her to testify in the guilt phase, even though she was present in the courtroom when Applicant was found guilty. In short, the record shows that trial counsel thought Applicant had mental-health issues but was competent to stand trial, and she came to this conclusion despite speaking with Applicant, his father, and Applicant's former wife. *See* First Amended Affidavit of Trial Counsel at 3 ("My observations of Applicant and interactions with him did not lead me to believe that he was legally incompetent, therefore I did not believe that it was necessary to request a competency evaluation.").

At trial, new signs of Applicant's potential mental instability arose. During the guilt phase of the trial, Applicant engaged in multiple outbursts and claimed that he was not receiving his required psychoactive medications in jail. For example, on the second day of his testimony, Applicant complained that he was having difficulty understanding the proceeding and that he was seeing lights blink. After these statements, the trial court

recessed the proceeding for the day. It appears that counsel believed that she did not need to suggest that her client was incompetent to stand trial because the court took breaks to accommodate Applicant before ultimately recessing for the day. But the statutory duty of a judge to suggest that a defendant may be incompetent to stand trial should not be confused with counsel's obligation to make a reasonable decision to investigate and to raise relevant issues to protect the client. This is especially so when counsel's belief as to a medical issue is based on her own lay opinion, even though she knew Applicant had mental-health issues in the past and was taking medications that gave him, in her estimation, a "substantial probability of regaining competency." Applicant's medical records from the jail were easily accessible and contained significant information (including evidence of a suicide attempt during the trial) that could have allowed his attorney to assert that he was incompetent. After reviewing the quantum of evidence known to counsel before and during trial, and whether the known evidence would lead a reasonable attorney to investigate further, we conclude that trial counsel's failure to further investigate was unreasonable under the circumstances. *See Ex parte Martinez*, 195 S.W.3d at 721; *see also Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004) (stating that trial counsel must investigate a client's mental-health history if he has a reason to believe his client suffers from mental-health issues); *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990) ("It must be a very rare circumstance indeed where a decision not to investigate would be 'reasonable' after counsel has notice of the client's history of mental

health problems."); *Beavers v. Balkom*, 636 F.2d 114, 116 (5th Cir. 1981) (holding that

defense counsel has an obligation to obtain medical records and to speak with his client's

doctors).

**B. Applicant was not prejudiced because there was not a reasonable probability that the fact-finder would have found Applicant incompetent to stand trial.**

Having decided the trial counsel's performance was deficient, we now turn to the

question of

> whether Applicant was harmed by counsel's actions under *Strickland v. Washington*, 466 U.S. 668 (1984), and how the determination of harm should be made considering this Court's holdings in *Sisco v. State*, 599 S.W.2d 607 (Tex. Crim. App. 1980), *Barber v. State*, 737 S.W.2d 824 (Tex. Crim. App. 1987), *Williams v. State*, 663 S.W.2d 832 (Tex. Crim. App. 1984), and their progeny.

The Supreme Court's prejudice standard in a *Strickland* analysis is flexible and must be

applied in many different contexts. For that reason, we review the relevant competency

laws and *Strickland* cases to resolve how Applicant can prove prejudice in this context

and, ultimately, whether he was prejudiced and entitled to relief.

At trial, the issue of incompetency must have first been raised by either a party to

the case or the trial court. *See* TEX. CODE CRIM. PROC. art. 46B.004(a), (b) (2004)

(allowing either party or the trial court to suggest that the defendant may be incompetent

to stand trial). But regardless of whether a party or the trial court was the one to make

such a suggestion, a trial court was not authorized to initiate an informal inquiry to

determine a defendant's competency unless the evidence of incompetency was "sufficient

to raise a *bona fide* doubt in the mind of the judge whether the defendant [was] legally competent." *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009); *see Gonzales v. State*, 313 S.W.3d 840, 841–42 (Tex. Crim. App. 2010). Assuming that the court harbored a *bona fide* doubt, then it initiates an informal inquiry to determine if "there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. art. 46B.004(c) (2004). We have held that the court is "to assay just that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency."[5] If the judge finds "some evidence" in the record that "rationally may

---

[5]*Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980); *see Williams*, 663 S.W.2d 832, *overruling Johnson v. State*, 564 S.W.2d 707 (Tex. Crim. App. 1978) (op. on reh'g) (overruling a split in precedent that required different constructions of the same statute depending on when the issue of competency was raised); *see also Barber*, 737 S.W.2d at 828 (applying the *Sisco–Williams* line of cases and remanding for an after-the-fact competency hearing). In *Sisco*, the appellant was convicted of indecency with a child and sentenced to a term of imprisonment. *Sisco*, 599 S.W.2d at 608. The appellant's attorney presented a pretrial motion for a psychiatric evaluation of his client. *Id.* An expert was appointed to determine if the appellant was "mentally competent to stand trial[.]" His finding that the appellant was competent was admitted without objection at the informal competency hearing. *Id.*; *see* TEX. CODE CRIM. PROC. art. 46B.004(c). Although other evidence that the appellant was incompetent was presented at the hearing, the trial court found that he was competent to stand trial based on the expert's report and, as a result, no jury was empaneled. *Sisco*, 599 S.W.2d at 608–09. The trial commenced shortly thereafter, no evidence was presented, and the appellant was found guilty. After he was convicted, he filed a motion for new trial, but it was denied. *Id.* at 609. He then filed a direct appeal with this Court, in which he alleged that the trial court erred in refusing to empanel a jury to determine if the appellant was incompetent to stand trial. *Id.* at 608.

We agreed that the trial court incorrectly determined the threshold issue of whether the appellant's incompetency had been raised sufficiently to warrant empaneling a jury. *Id.* Specifically, we disapproved of the trial court considering evidence of incompetency *and* competency at the pretrial hearing. This is because an informal hearing authorized under Article

lead to a conclusion of incompetency[,]" then a trial within a trial should be held on the issue of the defendant's competency. TEX. CODE CRIM. PROC. art. 46B.005(b) (2004); *Sisco*, 599 S.W.2d at 614. Thus, the determination of competency is not decided unless the court holds a trial to determine competency, which is authorized only if the court has a *bona fide* doubt that the defendant is not competent and, after assaying the evidence, it finds some evidence that the defendant is incompetent. *See Morris v. State*, 301 S.W.3d 281, 287 (Tex. Crim. App. 2009).

Article 46B.003(a) states that a person is incompetent to stand trial if the person does not have (1) "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or (2) "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. art. 46B.003(a) (2004); *see Strickland*, 466 U.S. at 695 ("The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors."). We have stated that the factors experts use in conducting a competency evaluation are also helpful to the fact-finder in determining the broader question of competency. *See Morris*, 301 S.W.3d at 286 n.10; *see also* TEX. CODE CRIM. PROC. art. 46B.024 (2004). These factors include whether a defendant can

---

46B.004(c) of the Texas Code of Criminal Procedure is not the appropriate venue to determine a person's competency on the merits; rather, the informal inquiry is intended to determine if the issue of competency is sufficiently raised such that a formal hearing should be held. Thus, we remanded the cause back to the trial court to apply the appropriate standard of review for an informal competency inquiry. *Id.* at 614.

> (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify.

*Morris*, 301 S.W.3d at 286 n.10. A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence. TEX. CODE CRIM. PROC. art. 46B.003(b) (2004).

The focus of the prejudice inquiry here is whether an applicant can show that there was a reasonable probability that he would have been found incompetent to stand trial if the issue of competency had been raised and fully considered.[6] *See Strickland*, 466 U.S. at 695. This is true because, under Texas law, even though there are conditions precedent that must be met to obtain a trial on competency, the only way the *outcome* of the guilt phase of the proceeding would be different is if the defendant proved that he was incompetent to stand trial. Anything less than a finding of incompetence would not have

---

[6]In a situation such as this, other jurisdictions have applied this formulation of the prejudice prong, or a similar derivative. *See e.g.*, *Warren v. Baenen*, No. 12-1148, 2013 WL 1316905, at *6 (7th Cir. Apr. 2, 2013) (asking whether there is a reasonable probability that, if a hearing had been held, the defendant would have been found incompetent to stand trial); *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (adopting the *Jermyn*, Third Circuit standard); *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001) (characterizing the prejudice inquiry as whether "there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered"); *People v. Burt*, 792 N.E.2d 1250, 1261 (Ill. 2001) (applying the *bona fide* doubt standard to the appellant's claim regarding the trial court and his alleged incompetency, but applying the standard of a reasonable probability that the appellant would have been found incompetent to stand trial to the appellant's ineffective-assistance-of-counsel claim).

changed the outcome.[7] In assessing prejudice, we look to the entire record. *Id.*

After reviewing the trial and writ records, we are of the opinion that Applicant was not prejudiced by his trial counsel's deficient performance because he has not met his burden of proof that, but for his trial counsel's deficient performance, there is a reasonable probability that a fact-finder would have found him incompetent to stand trial. Based on Dr. Scarano's testimony, Applicant argues that the lack of medication given at the jail—as well as the increase in dosage at the time of trial—caused Applicant to mentally decompensate. This decompensation, he stated, could include distorted perceptions of reality, interference with the thinking process, poor reasoning, and hallucinations. If true, Applicant argues, his insistence on testifying could not have been made with a reasonable degree of rational understanding, and trial counsel refused to recognize this because she believed Applicant was a malingerer.

Immediately before the State rested, the judge asked if Applicant would testify. In response, "Applicant expressed confusion, surprise, and a lack of understanding about the lack of witnesses and the defense plan. Pressed by counsel about testifying, Applicant said he felt 'coerced,' but ultimately agreed to testify." However, trial counsel stated in an

---

[7]The procedural posture of this case is different from other cases in which a defendant alleges that the trial-court judge violated his due-process rights by failing to inquire into his competency on its own motion. *See e.g.*, *Robinson*, 383 U.S. at 385; *Montoya*, 291 S.W.3d at 421; *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008).

affidavit found credible by the habeas court[8] that, Applicant told her before trial that he wanted to testify, and he relayed a version of events that he said his ex-wife could verify. Following up on the lead, counsel contacted Applicant's ex-wife, Elizabeth Patterson, who initially agreed with Applicant, but she quickly admitted that Applicant had asked her to lie. When counsel confronted Applicant, he confirmed that he told Patterson to lie, and "[he] got very defensive with [counsel] and said essentially, 'I'm gonna say what I'm going to say and how I want to say it. You don't need to go over it with me.'" Applicant made this statement at trial counsel's visit with him before the trial began on April 20, 2004. However, Applicant claims that he was not properly medicated beginning April 25, 2004, the day before his trial began. Thus, Applicant made the decision to testify before trial when he was correctly medicated. And when he did state that he would testify at trial, the following exchanged ensued:

> MS. BORG: And, Mr. Lahood, did you just make a comment to me that you thought you were being coerced?
>
> [APPLICANT]: Yes, I feel coerced.
>
> MS. BORG: Have you previously expressed to me your intention to testify on your own behalf?
>
> [APPLICANT]: I -- as a last result (sic) due to your advice, that I don't take the stand, I will want to leave the option if I feel like -- because my life -- you know, I want to get up there and say my side of the story if, you know, if I think -- if my personal opinion, that it will help me, but until -- I want you to go through -- I want to hear from the police officer, I want to hear

---

[8]The trial court judge was also the judge assigned to Applicant's habeas corpus applications.

> from a forensic expert on these test results. I want to build some kind of -- I mean, I want that to be concluded and then if I think we haven't shown reasonable doubt, I will gladly get up there and bare all because I know it's -- what's going to happen if I get up there. He's going to cross-examine me.

This shows that Applicant engaged in a reasoned choice of legal strategies and options. Being compelled to take the stand is a violation of a person's constitutional right to not self-incriminate. *See Johnson v. State*, 357 S.W.3d 653 (Tex. Crim. App. 2012); *Chapman v. State*, 115 S.W.3d 1 (Tex. Crim. App. 2003). In Applicant's case, however, he was simply faced with the risky choice of testifying in his own defense if counsel could not establish reasonable doubt. He also acknowledged that he understood the adversarial nature of the proceedings, when he stated that he knew he would be exposed to cross-examination if he testified, which might require him to "bare all."

Applicant points to his bizarre behavior at trial, which he attributes to not receiving his medications, to demonstrate a lack of competence. The mis-administration of Applicant's medications began the day before the trial, on April 25, 2004. The State rested the next day, and Applicant took the stand for about an hour. The habeas court found that Applicant testified during this time with no problems, and Applicant's objections do not directly dispute this assessment. In fact, Applicant was able to shift back and forth to different time periods in his story. He also relayed a detailed account of his version of events in a constant effort to undermine the victim's testimony by alleging that she testified against him because he attempted to contact his ex-wife, and that the victim wanted to go to Houston to "get good dope." At one point, while testifying about

himself and the victim picking up materials to make methamphetamine, he stated that he did not want to incriminate himself. Counsel asked Applicant if he realized that his testimony "doesn't sound real good to a jury," and he responded, "That's the truth, you know." The following day, Applicant's behavior deteriorated. For example, he stated that the lights were blinking. Later he stated that he needed his medication. However, between those outbursts, Applicant advised that he wanted certain medical records subpoenaed as part of his defense. After the comment about his medication being withheld, the trial court recessed for the day. The following day, Applicant concluded his testimony and explained that his medication situation had been remedied. Nonetheless, Applicant continued to talk when he was not supposed to and did not answer questions as he was directed to do, but he made no further complaints of hallucinations or of not understanding the proceeding.[9] Applicant's experts indicate that the mis-administration of psychoactive medications would produce the behavior exhibited by Applicant, but our review of the record indicates that Applicant was competent during his testimony because (1) he was able to disclose pertinent facts and events of the case, (2) he understood the adversarial nature of the proceedings, and (3) he put on a defense with a competing theory of the events that would have resulted in a not guilty verdict if the jury believed him.

---

[9]Applicant was frequently reminded to restrain himself from answering questions not asked of him and speaking out of turn. Although reminders by the trial court to limit one's answers to admissible evidence are not uncommon at trial, Applicant's comments were almost always directly related to what was being said at that moment and made in an attempt to create reasonable doubt.

Finally, Applicant argues that his suicide attempt after he was found guilty, but before he was sentenced, shows that there was at least a reasonable probability that he would have been found incompetent to stand trial. The medical records indicate that on April 30, 2004, Applicant returned from the hospital with a self-inflicted laceration to his left wrist. At his initial medical screening at the jail, Applicant denied any suicidal ideations and complained that he was dissatisfied with his court case and his prescriptions. One day later, on May 1, 2004, Applicant contradicted himself and told another screener that he was not getting his depression medications and he still felt depressed and suicidal. The screener did note, however, that Applicant appeared "mildly depressed" but had a cooperative attitude and goal-directed speech. Although an attempted suicide is disturbing, it does not necessarily prove that a person lost the ability to meaningfully consult with his attorney or that he lacked a rational and factual understanding of the charged offense and trial proceedings. "A person may be suffering from a severe mental disease or defect or he may be highly medicated, but he will be competent to stand trial if he still has the ability to meaningfully consult with his attorney and he had a rational as well as factual understanding of the charged offense and trial proceedings." *Ex parte Thomas*, No. WR-69,859-01, 2009 WL 693606, at *5 (Tex. Crim. App. Mar. 18, 2009) (Cochran, J., concurring) (not designated for publication).

Even if Applicant failed to receive some of his medication, there is nothing in the record that leads us to believe Applicant lost the ability to understand the proceedings or

rationally confer with his counsel. To the contrary, the only time at which Applicant possibly appeared legally incompetent, the trial was stopped and the medication problem was corrected. Moreover, the record supports many of the habeas court's findings that Applicant's behavior was that of a competent person. For example, the habeas court concluded that Applicant's direct examination showed considerable clarity of thought, his outbursts regarding medication and lack of comprehension began only on cross-examination, and the only opportunity for the victim's testimony to be rebutted was by Applicant. He testified that the victim drove the car to Houston (directly contradicting her assertion that she had been kidnapped), that they stopped in multiple populated areas where the victim could have alerted someone if she was in trouble, and that the victim packed for the trip (directly contradicting her assertion that the fact she had a hairbrush, clothes, and a toothbrush was merely coincidental). Applicant has not met his burden of proof to show a reasonable probability that he would have been found incompetent if there had been an incompetency trial. As a result, Applicant's ineffective-assistance-of-counsel claim must fail.

In reaching our conclusion, we have not ignored Dr. Scarano's opinion that it is common for individuals with severe mental illness to appear lucid for portions of proceedings, yet be incompetent during other portions of the proceeding. *See Drope v. Missouri*, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting

a change that would render the accused unable to meet the standards of competence to stand trial."). Nevertheless, neither habeas counsel nor Applicant's experts have provided specific examples of Applicant's behavior sufficient to meet Applicant's burden of proof that he failed to understand the proceedings or that he had an inability to rationally communicate with his counsel. To prevail in a claim of ineffective assistance of counsel, there must be some affirmative showing that the person lacked "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. art. 46B.003(a). If there is no affirmative evidence of either prong, then the applicant's argument must fail because there is an insufficient quantum of evidence to satisfy the *Strickland* threshold.

### III. CONCLUSION

We hold that trial counsel's decision to not investigate Applicant's mental-health history was unreasonable and constituted deficient performance, but Applicant has not demonstrated prejudice because he has not shown that there is a reasonable probability that, but for counsel's deficiency, he would have been found incompetent at an incompetency trial. We do not reach the third question filed and set for our review—the proper remedy if prejudice had been found—because Applicant cannot show that he was prejudiced.

Hervey, J.

Delivered: June 26, 2013

Publish