Opinion filed September 20, 2018



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00321-CR

_____

## CODY ADAM ALVAREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 26411A**

### MEMORANDUM OPINION

Appellant, Cody Adam Alvarez, was indicted for murder and entered a non-negotiated plea of guilty. The trial court convicted Appellant and assessed punishment at sixty years' confinement. In two issues, Appellant challenges the trial court's rulings with respect to Appellant's competency to stand trial. We affirm the judgment of the trial court.

### I. *Background*

Appellant was charged with the murder of Alexis Baker by blunt force trauma to the head allegedly caused by a claw hammer. The complaint alleged that

Appellant made a statement admitting that he killed Baker because "she was deceitful with him and he did not want her to spread his seed."

On August 12, 2015, Appellant filed both a notice suggesting that he was insane at the time of the offense and a motion seeking an examination. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.051, .101 (West 2018). Appellant also filed a "Motion Suggesting Incompetency and Request for Examination" requesting that one or more disinterested experts be appointed to examine Appellant with regard to his competency to stand trial. *Id.* art. 46B.004(a). The affidavit of Appellant's counsel indicated that Appellant was having difficulty communicating the details of the case and discussing options for the presentation of the defense. Appellant's counsel also believed it possible that Appellant had a mental condition that was interfering with Appellant's ability to communicate with him and participate meaningfully in his own defense.

On August 28, 2015, an informal inquiry was held to examine Appellant's competency to stand trial. The trial court asked Appellant a number of questions, including whether he had a recollection of the events that led up to him being in custody, to which Appellant responded affirmatively. The trial court also asked Appellant: "And have you been able to -- do you have the ability to tell [your attorney] those things?" and "Well, do you have the mental ability to tell him?" Appellant responded: "I'm sure I would at the right time and circumstances." When the trial court asked, "Do you think you're incompetent to stand trial?" Appellant answered: "I don't know, Judge. I feel like I have a problem."

Appellant responded to a number of questions from the trial court indicating that, to his knowledge, he had been charged with first-degree murder and aggravated assault. He knew where he was and could identify the trial judge and his defense attorney. He stated his age, education level, and place of birth and identified family members. Appellant told the trial court that he had been with MHMR since the

preceding year and that he was currently taking Seroquel and previously had taken three other drugs—Cogentin, trazodone, and risperidone. Appellant had never been in a mental hospital.

At the hearing, Appellant's attorney explained that previously Appellant did not have a recollection of the events and was not able to communicate with him effectively. Appellant's attorney was not clear whether it was a "recall issue" or a "focus distraction" issue and related: "There has still been the same difficulty up until at least today of him being able to confer with me openly about the two newest charges." The trial court responded: "[Y]ou just heard him say he did have a recollection of the events that led to him being in jail?" The trial court continued by stating: "He just said he hasn't had a chance to tell you yet because you haven't seen him in apparently the time span, whatever that is, I don't know." Appellant's attorney stated: "And that's apparently different from what -- the impression I got from him previously, so[--]." The trial court then denied the motion to have Appellant examined for competency to stand trial.

Despite the previous denial of an examination, on May 26, 2016, the trial court ordered Dr. Samuel Brinkman, a psychologist, to conduct an evaluation of the sanity of Appellant at the time of the offense. Dr. Brinkman's examination, however, concerned both competency to stand trial and sanity at the time of the alleged offense. Dr. Brinkman completed the examination on June 7, 2016, and his conclusions were that Appellant was competent to stand trial and that Appellant was sane at the time of the offense. Dr. Brinkman conferred with Appellant's counsel regarding the results of the evaluation. Appellant subsequently withdrew his notice of intent to raise the insanity defense.

On August 15, 2016, Appellant entered an open plea of guilty to the offense of murder, with punishment to be assessed by the trial court. Appellant was admonished in writing and in open court of the consequences of his plea. At that

3

time, the prosecutor, the trial court, Appellant, and his attorney agreed that Appellant was competent. After hearing testimony, including that of Dr. Brinkman, the trial court pronounced Appellant guilty of murder and sentenced him to sixty years' confinement.

## II. *Legal Standard*

In two issues, Appellant argues that the trial court abused its discretion and violated Appellant's due process and due course of law rights by refusing to order an examination and a formal competency trial. The State argues that the trial court did not err as Appellant was examined for competency by an expert and the result of the examination indicated that he was competent.

As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). The legislature has codified this due-process requirement to ensure that legally incompetent criminal defendants do not stand trial. *See* CRIM. PROC. arts. 46B.003– .005. Substantively, incompetency to stand trial is shown if the defendant does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). Procedurally, a trial court employs two steps for making competency determinations before it may conclude that a defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial. *Id.* arts. 46B.004–.005.

An informal inquiry is called for when there is a "suggestion" from any credible source that the defendant may be incompetent. *Id.* art. 46B.004(a), (c), (c-1). At the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.*

4

art. 46B.004(c). If that requirement is met, then the trial court must order a competency examination, and except for certain exceptions, it must hold a formal competency trial. *Id.* arts. 46B.005(a), (b), 46B.021(b). In the instant appeal, the trial court conducted the first step in this process by conducting an informal inquiry into appellant's competency. The trial court also later ordered a psychological examination but did not conduct a formal competency trial.

With respect to the evidentiary standard that must be met at the informal inquiry stage, a trial court must focus on three matters. First, the standard at the informal inquiry stage is whether there is "some evidence" of incompetency to stand trial. *See id.* art. 46B.004(c). The statute reads: "On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* The Court of Criminal Appeals has described the statutory "some evidence" standard as requiring "more than none or a scintilla" of evidence that "rationally may lead to a conclusion of incompetency." *Turner*, 422 S.W.3d at 692 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)).

Second, a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency. *Id.* In making this determination at the informal inquiry stage, "a trial court must consider only that evidence tending to show incompetency" and "put[ ] aside all competing indications of competency." *Id.* (quoting *LaHood*, 401 S.W.3d at 52). At the informal inquiry stage, "the standard for requiring a formal competency trial is not a particularly onerous one—whether, putting aside the evidence of competency, there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial." *Id.* at 696.

Third, some evidence must be presented at the informal inquiry stage to show that a defendant's mental illness is the source of his inability to participate in his own defense. *Id.* at 691. There must be "*some* evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id.* at 696. Thus, it is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness. *Id.*

### III. *Analysis*

At the informal hearing, the trial court had before it the affidavit of Appellant's trial counsel, swearing that "the Defendant has had difficulty communicating with me regarding the details of the case and discussing options for the presentation of a defense" and "a mental condition of some kind may be interfering with [Appellant's] ability to communicate with his counsel and participate meaningfully in his own defense." At this point, there was an indication of difficulty communicating and the possibility that there may be a mental condition. There was no specific information about the difficulties Appellant was having communicating with his attorney. When the trial court asked Appellant if he had talked to his lawyer about the charges, Appellant said no "[b]ecause it's the second time I've seen him." In response to the question of whether he had a recollection of the charges filed against him, Appellant stated, "Yes, from letters I get from [counsel] saying that . . . ." When the trial court asked Appellant: "Do you think that you're incompetent to stand trial?" Appellant responded, "I don't know Judge. I feel like I have a problem."

Considering only that evidence tending to show incompetency, the trial court could have failed to find more than a scintilla of evidence of a debilitating mental illness that fueled a refusal to cooperate with counsel. The trial court could have reasonably concluded that a communication issue did not exist between Appellant and his counsel and that Appellant was not currently suffering from a mental illness that caused him to be uncommunicative with counsel. "The fact that a defendant is mentally ill does not by itself mean he is incompetent. Nor does the simple fact that he obstinately refuses to cooperate with his trial counsel." *Turner*, 422 S.W.3d at 691 (footnote omitted); *see Reed v. State*, 112 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("It is not enough for counsel to allege unspecified difficulties in communicating with the defendant." (citing *Moore v. State*, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999))). "Indeed, even a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy." *Turner*, 422 S.W.3d at 691.

Appellant's counsel alleged unspecified difficulties in communicating with his client. When the trial court inquired further concerning communication issues, the trial court was informed that those issues were unconnected with any alleged mental illness. Nothing in the record from the informal inquiry indicated that Appellant's failure to communicate with his counsel was related to any mental illness. Based on the evidence presented at the initial inquiry, the trial court did not abuse its discretion in refusing to conduct a formal competency trial. The continuing competency of Appellant through the punishment hearing is supported by the subsequent examination of Appellant by Dr. Brinkman.

Although Appellant argues that Dr. Brinkman's examination extended only to an assessment of sanity at the time of the event, Dr. Brinkman's report reveals that his assessment also covered competency to stand trial. At the beginning of his

report, Dr. Brinkman states: "This 33-year-old-Hispanic male completed standardized neuropsychological assessment to help determine **competency to stand trial** and sanity at the time of an alleged offense" (emphasis added). The report goes on to describe the fifteen procedures and tests used to determine intelligence, memory, personality, conceptual skills, writing skills, and language and communication skills. The report concludes with a description of the standards relating to competency and an opinion that Appellant is competent to stand trial.

The parties and the trial court were aware of Dr. Brinkman's conclusions prior to the entry of the guilty plea. At a hearing on a motion to suppress, the attorneys for the State and Appellant mentioned that Dr. Brinkman had performed both a sanity and a competency assessment, and the trial court confirmed that it was aware of Dr. Brinkman's report. Dr. Brinkman testified during the punishment phase and stated that he performed an evaluation of Appellant's competency and concluded that Appellant was competent to stand trial. In his closing argument, Appellant's trial counsel pointed out that Appellant had previously suffered from mental illness but that the evidence showed a "significant change in [Appellant's] demeanor, his capacity, his apparent overall mental status, and that would coincide with the regular treatment that he has finally been getting." The trial court, the prosecutor, and Appellant's attorney were all in agreement that Appellant was competent to stand trial.

## IV. *Conclusion*

Based on the limited testimony of Appellant's communication issue with his counsel and possible mental illness at the initial inquiry, the trial court did not abuse its discretion in failing to conduct a formal competency trial. Appellant's due process and due course of law rights were not violated because Appellant received an initial inquiry into his competency and an appointed psychologist assessed

Appellant's competency and determined that Appellant was competent to stand trial. We overrule Appellant's issues and affirm the judgment of the trial court.


REBECCA SIMMONS

FORMER JUSTICE


September 20, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Simmons, F.J.,[1] and Wright, S.C.J.[2]

Willson, J., not participating.

---

[1] Rebecca Simmons, Former Justice, Court of Appeals, 4th District of Texas at San Antonio, sitting by assignment.

[2] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.