**Opinion filed February 21, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00049-CR

_____

## TONY LEE JONES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24776**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court convicted Tony Lee Jones of indecency with a child by exposure. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of seven years. In two related issues, Appellant challenges the trial court's rulings with respect to his competency to stand trial. We affirm.

*Background Facts*

On June 9, 2016, K.B. and her sister, D.B., were in their grandmother's house listening to music. Around 6:20 p.m. that evening, they heard someone howling like a wolf outside. When they went outside, they observed Appellant in his front yard across the street. Appellant was on his hands and knees and was howling loudly. Appellant then went back inside his house for a short time and reappeared completely naked. According to K.B., Appellant then proceeded to stroke his erect penis while staring in their direction. In doing so, Appellant also shouted at them "[t]o come ride him" and yelled other "sexual things."

K.B. and D.B.'s mother, Tracy B., also witnessed Appellant's behavior that evening. According to Tracy, Appellant was "[h]igh and naked" and "apparently messed up." Tracy confirmed that Appellant made lewd comments to K.B. and D.B. Specifically, Tracy testified that Appellant was "[s]troking himself and staring at [her] kids." When Tracy insisted that Appellant go back inside his house, Appellant also told Tracy: "F--k you, b---h, come ride this d--k." Eventually, Appellant did go back inside his house. Tracy subsequently called the police to report what had happened.

Appellant testified on his own behalf at the guilt/innocence phase. He testified that he had had two shots of Jose Cuervo that day. When the police arrived, one of the responding officers also noticed silver paint around Appellant's lips. At trial, Appellant denied huffing paint and, instead, explained that the officer saw paint on his face because he was painting his house earlier that day. During the police investigation, Appellant also initially denied being naked outside but, eventually, admitted that he had been outside before the police arrived. After the police took statements from the witnesses, Appellant was arrested for the offense of indecency with a child.

At no point in time did Appellant file a motion suggesting that he was incompetent to stand trial. Although the trial court broached the topic of Appellant's legal competence at a pretrial hearing, both Appellant and Appellant's trial counsel conveyed to the trial court that Appellant was competent to stand trial. Specifically, Appellant expressed that he understood the crime for which he was charged and the nature of the proceedings against him. Appellant further expressed that he was satisfied with the representation he received from his attorney. When the trial court asked whether Appellant had ever had any mental problems, Appellant answered: "No, sir." Additionally, Appellant's trial counsel expressed that Appellant was "competent and sane."

At Appellant's trial, K.B. and Tracy provided their eyewitness accounts of what happened. After the State rested, both the trial court and Appellant's trial counsel admonished Appellant about his Fifth Amendment right against self-incrimination and the consequences of his decision to testify, namely being cross-examined by the State. Appellant stated that he understood his rights and the consequences but that he still wanted to testify in his own defense.

On the stand, Appellant refuted the allegations against him. He testified that on June 9, 2016, he was not on all fours and howling outside and that he did not expose himself or say anything sexual to the children or Tracy. He urged that both K.B. and Tracy were not telling the truth. When Appellant's trial counsel asked why K.B. and Tracy would lie about what happened, Appellant responded: "They're controlled by little almighty souls and Dat magic." He further clarified that "Dat magic" referred to "God Almighty's magic. . . . The Father, Son, and Holy Spirit." At this point, trial counsel asked Appellant a series of questions to show that Appellant was presently competent to stand trial. Appellant testified that he was not confused and understood the proceedings against him and that he had had plenty of time to consult with his attorney.

On cross-examination, Appellant expounded upon the meaning of "Dat magic" and how it controlled K.B. and Tracy. He testified that Dat magic was "the Father, the Heavenly Father" and that "Dat is everything in the whole world." Appellant explained that K.B. and Tracy were "controlled by the little almighty souls within their persons," which in turn were controlled by "[t]he people that look behind your eyes." He stated that K.B. and Tracy were "contracted verbally to them." Appellant then explained that he was not completely nude when the police arrived. He testified that he was wearing a "see-through" dress, without any "panties on or shoes." According to Appellant, the police arrested Appellant for indecency because of his lack of clothing and because he had been arrested for a "public outburst" offense two weeks before the incident.

After the defense rested, the trial court sua sponte conducted an informal inquiry into Appellant's legal competence. The informal inquiry included the following exchange between the trial court and Appellant:

THE COURT: Mr. Jones, you have indicated this, but I want to confirm with you, you and [trial counsel], y'all have gone over the facts of this case; is that right?

[APPELLANT]: Uh-huh.

THE COURT: And, you understand what you are charged with?

[APPELLANT]: Yes, sir.

THE COURT: Okay. And so, you have a good, factual understanding of the -- what these proceedings are against you; is that correct?

[APPELLANT]: Yes.

THE COURT: All right. And, you have been able to work with [trial counsel] and talk to him and -- in preparing your defense; is that correct?

[APPELLANT]: Not as much as I wanted to, but yes.

THE COURT: Not as much as you want to?

4

[APPELLANT]:  Not as much as I wanted to.

THE COURT:  But, you've -- you've definitely -- you had the ability, and I've given y'all even time this morning, to consult with him, and you understand everything he's telling you?

[APPELLANT]:  Yes, I do understand everything he is telling me.

THE COURT:  All right.  Thank you.  You can step down.

After questioning Appellant, the trial court also questioned his trial counsel about Appellant's competency to stand trial.  First, the trial court asked trial counsel whether Appellant had sufficient present ability to consult with him with a reasonable degree of rational understanding.  Trial counsel responded: "Yes, Judge, we've had no problems."  The trial court then asked trial counsel whether he believed that Appellant had a rational and factual understanding of the proceedings against him, to which trial counsel answered: "He does."  After conducting this informal inquiry into Appellant's legal competence, the trial court found Appellant competent to stand trial.  At no point in the proceedings did Appellant request either a psychiatric or psychological competency examination or a formal competency hearing.

*Analysis*

In Appellant's first issue, he contends that the trial court abused its discretion because it "misapplied the law" when it conducted an informal inquiry into Appellant's competency.  Specifically, Appellant asserts that the questions the trial court asked Appellant and his trial counsel during the informal inquiry were "aimed towards and support a finding of competency."  As a result, Appellant argues that the trial court incorrectly considered "only evidence of competency, rather than only evidence that supported incompetency."  Therefore, Appellant argues that the trial court violated his rights under Article 46B of the Texas Code of Criminal Procedure and his fundamental right to due process.  We disagree.

5

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). The legislature has codified this due-process requirement to ensure that legally incompetent criminal defendants do not stand trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.003–.005 (West 2018). A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence. *Id.* art. 46B.003(b). Substantively, incompetency to stand trial is shown if the defendant does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). The Texas Court of Criminal Appeals has held that mental illness, by itself, does not equate to incompetence to stand trial. *Turner*, 422 S.W.3d at 691. As explained by the court, only "when a defendant's mental illness operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests" does such mental illness rise to the level of incompetence to stand trial. *Id.*

Procedurally, a trial court employs two steps for making competency determinations before it may conclude that a defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial. *Id.* arts. 46B.004–.005. An informal inquiry is called for when there is a "suggestion" from any credible source that the defendant may be incompetent. *Id.* art. 46B.004(a), (c), (c-1). "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(a). At the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). If that requirement is met, then the trial court

must order a competency examination, and except for certain exceptions, it must hold a formal competency trial to determine whether the defendant is incompetent to stand trial. *Id.* arts. 46B.005(a), (b), 46B.021(b). In this case, the trial court conducted the first step in this process by conducting an informal inquiry into Appellant's competency. But the trial court did not pursue the second step in this analysis because it determined that Appellant was competent to stand trial after its informal inquiry.

We review a trial court's decision regarding an informal competency inquiry for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner*, 422 S.W.3d at 692 & n.31; *see also Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008). In determining whether the trial court abused its discretion, we do not substitute our own judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426. A trial court's firsthand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).

With respect to the evidentiary standard that must be met at the informal inquiry stage, a trial court must focus on three matters. First, the standard at the informal inquiry stage is whether there is "some evidence" of incompetency to stand trial. *See* CRIM. PROC. art. 46B.004(c). The statute reads: "On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* The Texas Court of Criminal Appeals has described the statutory "some evidence" standard as requiring "more than none or a scintilla" of evidence that "rationally may lead to a conclusion of incompetency." *Turner*, 422 S.W.3d at 692 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)).

7

Second, a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency. *Id.* In making this determination at the informal inquiry stage, "a trial court must consider only that evidence tending to show incompetency" and "put[] aside all competing indications of competency." *Id.* (*quoting LaHood*, 401 S.W.3d at 52). At the informal inquiry stage, "the standard for requiring a formal competency trial is not a particularly onerous one—whether, putting aside the evidence of competency, there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial." *Id.* at 696.

Third, some evidence must be presented at the informal inquiry stage to show that a defendant's mental illness is the source of his inability to participate in his own defense. *Id.* at 691. There must be "some evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id.* at 696. Thus, it is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness. *Id.*

We conclude that the trial court properly applied the law when it conducted an informal inquiry into Appellant's competence to stand trial. The record shows that, during the informal inquiry, the trial court posed a series of short and simple questions to both Appellant and his trial counsel to gauge Appellant's understanding of the proceedings and his ability to consult with his attorney. The responses of both Appellant and his trial counsel showed that Appellant was competent to stand trial.

Contrary to Appellant's assertions, these questions were not "aimed towards" eliciting a response in favor of competency. Rather, the trial court's questions were

8

open-ended and neutrally crafted to determine whether or not Appellant was competent to stand trial. Indeed, each question could have elicited the opposite response, which would have indicated that Appellant was legally incompetent. The fact that the trial court's questions established that Appellant was legally competent, however, does not render the trial court's inquiry invalid. *See generally Stevenson v. State*, No. 05-12-01668-CR, 2014 WL 3555767, at *4 (Tex. App.—Dallas 2014, pet. ref'd) (not designated for publication) (holding that trial court did not abuse its discretion when it conducted an informal inquiry into the defendant's competency in a similar fashion). We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court abused its discretion when it failed to hold a formal competency hearing. Specifically, he asserts that a formal hearing was required because "the evidence was more than sufficient" to support a finding that Appellant was incompetent to stand trial. Appellant asserts that the evidence of incompetency included: (1) evidence of his mental illness, which was supported by his lack of medication; (2) his bizarre behavior during the offense itself; and (3) his decision to testify against the advice of counsel, providing delusional testimony at trial. We disagree.

As mentioned above, a person will only be found legally incompetent "if the person does not have: (1) sufficient *present ability to consult* with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." CRIM. PROC. art. 46B.003(a) (emphasis added). Consequently, Appellant's behavior at the time of the offense, his ultimate decision to testify after consulting with his attorney, and his subsequent testimony have no bearing on the trial court's competency determination and, thus, do not constitute evidence of incompetency. *See id.*

As noted above, to warrant a formal competency hearing, there must be some evidence, at the informal inquiry stage, from which it may rationally be inferred that

(1) "the defendant suffers some degree of debilitating mental illness," (2) "he obstinately refuses to cooperate with counsel to his own apparent detriment," and (3) "his mental illness is what fuels his obstinacy." *Turner*, 422 S.W.3d at 696. Based on the evidence presented at trial, a formal competency hearing was not required because there was no showing of an inability to confer with trial counsel or a lack of understanding of the proceedings against him. Furthermore, we note that, after the informal inquiry, Appellant's trial counsel did not request a formal competency trial. *See Turner*, 422 S.W.3d at 693 (noting the absence of a request by defendant's trial counsel for a formal competency trial). Accordingly, we cannot conclude that the trial court abused its discretion by not conducting a formal competency hearing. We overrule Appellant's second issue.

## This Court's Ruling

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


February 21, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.