

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-77,067

### DEMOND DEPREE BLUNTSON, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 2012CRO000674-D1
### IN THE 49TH JUDICIAL DISTRICT COURT
### WEBB COUNTY

**RICHARDSON, J., delivered the opinion for a unanimous Court.**

**O P I N I O N**

In May 2016, a jury convicted Appellant of two counts of capital murder for fatally

shooting twenty-one-month-old D.B., Appellant's son with Brandy Cerny, and

six-year-old J.T., Cerny's son from a former relationship.  *See* TEX. PENAL CODE

§ 19.03(a)(8).  Based on the jury's punishment phase verdicts, the trial court sentenced

Appellant to death for each count. *See* Art. 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h).

Appellant raises twenty-six points of error, none challenging the sufficiency of the evidence to support either his convictions or death sentences. Five points of error relate to his competence to stand trial and the competency proceedings below. In two of these points of error, Appellant asserts constitutional and statutory violations based, in part, on the trial court's failure to comply with the statutory procedures set forth in Chapter 46B. After reviewing the competency proceedings in the trial court, we abate the appeal and remand the cause to the trial court to conduct a retrospective competency review.

## THE COMPETENCY PROCEEDINGS BELOW

Eight months after a Webb County grand jury indicted Appellant for capital murder, Appellant's counsel filed a "Motion for Jury Trial on Issue of Incompetency." In support of the motion, counsel attached his affidavit and an excerpt from a report of Dr. John Enriquez, a psychiatrist who had conducted "a general psychiatric examination" of Appellant. In the excerpt, Enriquez opined that Appellant "is going through a brief psychotic break" and that "[h]is mental state has decompensated and is now becoming delusional."

Appellant's counsel presented the motion to the trial court at a pretrial hearing two days later. He read aloud the excerpt from Enriquez's report and informed the court that,

---

[1] Unless otherwise indicated, all subsequent citations in this opinion to "Articles" or "Chapters" refer to the Texas Code of Criminal Procedure.

based on his "own personal observations" of Appellant, he believed that Appellant was incompetent to stand trial. Counsel noted the "very low" threshold for a jury trial on the issue of competency—"it only requires that counsel show that there is some evidence that would support a finding that the defendant may be incompetent to stand trial"—and reminded the court that Article 46B.005 requires the court to order an examination if that evidentiary threshold is met. He then asked the court to appoint an expert and order a competency examination. In response to counsel's request, the State "agree[d] that there is sufficient evidence that there may be some incompetency." The trial court orally granted counsel's request, indicating that it would appoint an expert and order a competency examination. The court subsequently signed an order granting the motion for a jury trial on the issue of competence and, a week later, signed an order for a competency examination. The order for the competency examination, however, did not appoint an expert.[2] Therefore, the following month, the trial court signed another order for a competency examination that appointed Dr. Gabriel Holguin to examine Appellant.

Two weeks later, Appellant's counsel filed a motion to abate the competency examination. The trial court conducted a hearing on the motion the following month. At the hearing, Appellant's counsel asked the court to abate Appellant's competency evaluation "pending at least a preliminary mitigation investigation by the mitigation specialist." Counsel explained that the mitigation investigation might uncover relevant

---

[2] It appears that the date of the order was mistakenly written in the blank intended for the expert's name.

personal history, including information about mental illness, that "should be made known to the mental health examiner." The State objected to abating the competency examination. The trial court orally denied the motion at the hearing and signed an order memorializing that ruling the same day.

Approximately two weeks later, the State filed a motion seeking to amend the trial court's order for a competency examination so as to have the order track the statutory language of Chapter 46B.[3] On the same date, the trial court granted the motion and signed an amended order for a competency examination that again appointed Holguin.

Almost five months later, Appellant's counsel filed a "Motion to Withdraw Request for an Incompetency Examination and for a Jury Trial on the Issue of Incompetency." Three months after the motion was filed, the trial court conducted a hearing on the motion. At the hearing, Appellant's counsel noted that he initially requested a competency examination "exactly a year ago" and that "for various reasons," the examination had not been done. Counsel asserted that in consulting with Appellant, both of Appellant's attorneys felt that Appellant was now competent to stand trial. Counsel explained that since the time the defense requested the competency examination, counsel had listened to recordings of Appellant's phone calls in the jail and observed that Appellant was "able to carry on a normal conversation." Counsel acknowledged that

---

[3] In the motion, the State expressed concerns that the language in the order limited the type of testing that the appointed expert could conduct in the competency examination.

Appellant "makes comments which are somewhat unusual" but expressed that counsel did not believe that "that rises to the level of incompetence."

The trial court, however, noted the statute's evidentiary standard—"[I]t doesn't have to rise to the level of incompetence. It merely has to show some evidence of incompetence." The court remarked that it had previously made a finding that there was some evidence to support a finding of incompetency. The court also expressed that it "had the benefit of seeing [Appellant] in and out of court over the last six to eight months" and "his behavior alone would have probably required [the court] sua sponte to order the examination in any event." The trial court orally denied Appellant's motion at the hearing. Two days later the court signed an order memorializing the ruling, as well as a second amended order for a competency examination. The second amended order again appointed Holguin to examine Appellant and also emphasized that the evaluation should occur within thirty days of the order.

Approximately six weeks later, the trial court signed another order for a competency examination, this time appointing Dr. Brian P. Skop to examine Appellant.[4] Three weeks after signing that order, the trial court signed an amended order for a competency examination that again appointed Skop. Apparently, the trial court signed

---

[4] The record does not reflect what prompted the issuance of this order.

this order in response to the State's motion to amend the order to have the order track Chapter 46B's statutory language.[5]

Five months later, the State filed another motion to amend the trial court's order for a competency examination. The State filed this motion in response to notification from the court coordinator that Skop had failed to conduct the competency examination or respond to the coordinator's emails concerning his appointment. The State asked the trial court to appoint Dr. Michael Jumes to conduct Appellant's competency evaluation instead of Skop. The trial court signed an amended order for a competency examination appointing Jumes the day after the State filed its motion seeking to replace Skop.

Jumes evaluated Appellant almost four weeks later and prepared his report to the trial court the following month. The report, in which Jumes concluded that Appellant was competent to stand trial, was filed with the court under seal.

Three months after the competency report was filed, the proceedings resumed with a hearing on Appellant's *pro se* request to represent himself.[6] The trial court denied Appellant's request after finding that he "[did] not have the capacity to represent [him]self." Over the next eleven months, the trial court conducted eight more pretrial

---

[5] As in the State's prior motion to amend, the State expressed concerns that the language in the order limited the type of testing that the appointed expert could conduct in the competency examination.

[6] Appellant made his request in a letter to the trial court. This letter was the only *pro se* document that Appellant filed. Appellant's counsel filed all other motions ruled on by the trial court.

hearings—including a hearing on Appellant's motion to transfer venue and motion to suppress certain evidence, a hearing on numerous pretrial defense motions, and several hearings on Appellant's motions for continuance—and the case proceeded to trial.

After the State rested its case in chief, Appellant's counsel suggested to the trial court that, based on Appellant's "irrational behavior" in court as well as during counsels' attempts to confer with him, Appellant was incompetent to stand trial. The State maintained that Appellant's behavior demonstrated belligerence and defiance, not incompetence. The trial judge, noting that he had observed Appellant not only during the trial but through "the entire process" and that "we've had evaluations of him already, and . . . had the findings come back with regard to that," expressed that he had not seen a deterioration.[7] The judge found that "we do not need to go through an evaluation process" because "we've done what we already had to do." The court reiterated that nothing in Appellant's behavior led it to believe that the proceedings should be interrupted for another evaluation of Appellant.

---

[7] The record reflects that Appellant's counsel sought a forensic psychological and neuropsychological examination of Appellant by Dr. John Matthew Fabian. Counsel requested that Fabian evaluate Appellant's competency to stand trial, his sanity at the time of the offense, and potential issues for mitigation evidence. The record contains, under seal, Fabian's report on his competency evaluation of Appellant in which Fabian opined that Appellant was competent to stand trial. The trial court's reference to "evaluations" (plural) appears to refer to the competency examinations by both Jumes and Fabian.

## STATUTORY PROCEDURES AND REQUIREMENTS

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *see Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ("We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'") (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)). "Due process also mandates state procedures that are adequate to assure that incompetent defendants are not put to trial." *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013). In Texas, Chapter 46B sets forth those procedures. This statutory scheme codifies the constitutional standard for competency to stand trial and describes the circumstances that require—and procedures for making—a determination of whether a defendant is competent to stand trial.[8] *Turner*, 422 S.W.3d at 689; *see* Arts. 46B.001–.055.

Procedurally, a trial court employs two steps for making competency determinations: the first is an informal inquiry; the second, if applicable, is a formal competency trial. *Boyett*, 545 S.W.3d at 563; *see* Arts. 46B.004(c), 46B.005(b). An informal inquiry is triggered upon a suggestion from any credible source that the

---

[8] The constitutional standard for competency to stand trial asks whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *See* Art. 46B.003(a); *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Turner*, 422 S.W.3d at 689; *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial.").

defendant may be incompetent. *Boyett*, 545 S.W.3d at 563; *see* Art. 46B.004(a)–(c-1).

At the informal inquiry, the trial court must determine "whether there is some evidence

from any source that would support a finding that the defendant may be incompetent to

stand trial." Art. 46B.004(c); *see Boyett*, 545 S.W.3d at 563. "In making this

determination, a trial court must consider only that evidence tending to show

incompetency, 'putting aside all competing indications of competency, to find whether

there is some evidence, a quantity more than none or a scintilla, that rationally may lead to

a conclusion of incompetency.'" *Turner*, 422 S.W.3d at 692 (quoting *Ex parte LaHood*,

401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)); *see Boyett*, 545 S.W.3d at 564 (noting

Court's prior description of statutory "some evidence" standard). We have observed that

this "some evidence" standard "is not a particularly onerous one." *Boyett*, 545 S.W.3d at

564 (quoting *Turner*, 422 S.W.3d at 696). If that "some evidence" standard is met, the

trial court must order a psychiatric or psychological competency examination, and, except

for a statutorily described exception, must hold a formal competency trial. *Boyett*, 545

S.W.3d at 563; *Turner*, 422 S.W.3d at 693; *see* Arts. 46B.005(a)–(b), 46B.021(b).

## DISCUSSION

Appellant argues that the trial court abused its discretion by failing to hold a

formal competency trial to determine whether he was competent to stand trial. The State

contends that no competency trial was required because the competency issue was

resolved in the "informal inquiry" phase without a determination that some evidence of

incompetency existed. The State also suggests that because the trial court resumed the proceedings after receiving Jumes's report, the trial court found no evidence suggesting incompetency. The record refutes the State's arguments.

Appellant's counsel suggested Appellant's incompetency in his "Motion for Jury Trial on Issue of Incompetency." At the hearing on the motion, counsel presented the findings from Enriquez's general psychiatric evaluation of Appellant as well as counsel's opinion regarding Appellant's competence based on his interactions with Appellant. Although the trial court made no oral finding at the hearing, it explicitly stated in the ensuing order for a competency examination first appointing Holguin that "the Court after conducting an informal inquiry *finds that there is evidence to support a finding of incompetency*." (Emphasis added.)

Further, the trial court stated in the subsequent amended order appointing Holguin that "the Court, after conducting an informal inquiry, finds that an examination under Chapter 46B . . . *must be conducted* to determine whether Defendant, DEMOND DEPREE BLUNTSON, is incompetent to stand trial." (Emphasis added.) As the State correctly notes, a competency examination may be ordered as part of the informal inquiry. *See* Art. 46B.021(a) (providing that "[o]n a suggestion that the defendant may be incompetent to stand trial," trial court "may" appoint expert to examine defendant and report to court on competency or incompetency of defendant). However, such an examination is mandatory once the threshold of "some evidence" to support a finding of

incompetence has been met. *See* Art. 46B.021(b) (providing that trial court "shall" appoint expert to examine defendant and report to court on competency or incompetency of defendant "[o]n a determination that evidence exists to support a finding of incompetency to stand trial"). The trial court's use of the phrase "must be conducted" indirectly refers to the mandatory examination provision of Article 46B.021 and implicitly reflects the court's determination that the threshold of "some evidence" of incompetence had been met because only then is the competency examination mandatory.

Moreover, at the hearing on Appellant's motion to withdraw his request for a competency examination and jury trial on the issue of competency, the State objected to Appellant's motion because the request "was after the Court's informal inquiry and finding that there was evidence to support a finding of incompetence." The prosecutor, emphasizing the "great significance" of that finding, argued that "by operation of law" the competency evaluation was mandatory—not discretionary—because the court had found some evidence of incompetency at the informal inquiry. In exchanges with the prosecutor and Appellant's counsel, the trial court affirmed that it had conducted an informal inquiry and found some evidence to support a finding of incompetency. The trial court signed the second amended order after that hearing. Like the previous amended order, the second amended order stated that "the Court, after conducting an informal inquiry, finds that an examination under Chapter 46B . . . *must be conducted* to determine whether Defendant, DEMOND DEPREE BLUNTSON, is incompetent to stand trial." (Emphasis added.)

Furthermore, the trial court explicitly stated in the subsequent order for competency examination first appointing Skop that it "*found that there is evidence to support a finding of incompetency* and that an examination under Chapter 46B . . . *must be conducted* to determine whether Defendant, Demond Depree Bluntson, is incompetent to stand trial." (Emphases added.) The trial court repeated this language in the amended order again appointing Skop as well as the amended order appointing Jumes.

Contrary to the State's contentions, the record before us demonstrates that the trial court completed the "informal inquiry" step at the hearing on Appellant's motion for a jury trial on the issue of competency. In doing so, the court determined that there was some evidence to support a finding that Appellant was incompetent to stand trial.

Under Chapter 46B, when the competency proceeding reaches the second step of the competency determination (because the trial court has determined that some evidence of incompetency exists), the trial court must do three things:

(1)     appoint an expert to conduct a competency examination (if it has not already done so), *see* Arts. 46B.021(b) (requiring appointment of expert to conduct competency examination of defendant), 46B.005 (requiring court to order examination to determine whether defendant is incompetent to stand trial);

(2)     "stay all other proceedings in the case," Art. 46B.004(d); and

(3)     conduct a formal competency trial, *see* Art. 46B.005(b) (providing that "the court shall hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits").

Here, the trial court appointed an expert to evaluate Appellant, ordered a competency examination of Appellant, and stayed the proceedings. But the record does not reflect that the trial court held a formal competency trial to determine whether Appellant was incompetent. Under the plain language of Article 46.005(b), the trial court "shall hold a trial" before determining "whether the defendant is incompetent to stand trial." *Id.* The use of the word "whether" indicates that the trial court must have a competency trial before determining that the defendant is incompetent to stand trial *or* before determining that the defendant is competent to stand trial. Under Article 46B.051, the trial may be before the court or a jury. Art. 46B.051; *see Turner v. State*, 570 S.W.3d 250, 262 (Tex. Crim. App. 2018). But irrespective of who the factfinder is, the trial court must have a competency trial. We note that in this case, Appellant filed a motion requesting a jury trial on the issue of competency, and the trial court signed an order granting the motion. The trial court also subsequently signed an order denying Appellant's motion to withdraw his request for a jury trial on the competency issue.

The only exception to the trial court's obligation to hold a formal competency trial appears in Article 46B.005(c). Under that subsection, the trial court is not required to have a competency trial if "(1) neither party's counsel requests a trial on the issue of incompetency; (2) neither party's counsel opposes a finding of incompetency; and (3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency." Art. 46B.005(c). The statute's plain language indicates that the three-

part exception in Article 46B.005(c) applies only when the parties and the trial court agree that the defendant is incompetent. In other words, after the trial court has made the threshold evidentiary determination of "some evidence" of incompetence, the statutory language allows the trial court to forgo a competency trial when both parties and the court agree that the defendant is incompetent but not when they agree that he is competent. *See Turner*, 422 S.W.3d at 693 n.35 ("If evidence exists to support a finding of incompetency, a [competency] trial is mandated unless the parties can agree without a trial that the defendant is incompetent.") (internal quotation marks omitted).

Absent this narrow statutory exception, when the trial court determines that there is some evidence that the defendant may be incompetent to stand trial, the court must conduct a competency trial. Here, the trial court made that threshold evidentiary determination but failed to hold a trial to complete the determination of whether Appellant was incompetent to stand trial. We agree with Appellant that the trial court erred by failing to hold such a trial. Accordingly, we sustain that portion of Appellant's eleventh point of error complaining about the trial court's failure to conduct a formal competency trial.

We disagree with Appellant, however, that the trial court's failure to comply with Chapter 46B's statutory procedures requires reversal of his conviction. "When a trial court errs in failing to conduct a competency hearing, the remedy is to abate the appeal and remand the cause to the trial court to conduct a retrospective trial if one is feasible."

*Turner*, 570 S.W.3d at 262; *see Owens v. State*, 473 S.W.3d 812, 816 (Tex. Crim. App. 2015) ("We have long held that the appropriate remedy when there is an error in competency proceedings is to abate the appeal and remand the cause to the trial court to determine the feasibility of a retrospective competency proceeding."); *see, e.g.*, *Boyett*, 545 S.W.3d at 566; *Turner*, 422 S.W.3d at 696–97.

## CONCLUSION

Because the record fails to show that the trial court conducted the statutorily mandated competency trial after determining that some evidence of Appellant's incompetency existed, we abate this appeal and remand the cause to the trial court. On remand, the trial court shall first, within thirty days from the date of this opinion, determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations. *See Turner*, 422 S.W.3d at 696. Should the trial court deem a retrospective competency trial to be feasible, it shall proceed to conduct such a trial in accordance with Subchapter C of Chapter 46B of the Code of Criminal Procedure. Regardless of whether the trial court deems a retrospective competency trial to be feasible, the record of the proceedings on remand shall be returned to this Court within 180 days of the date of this opinion for reinstatement of the appeal.

Delivered:     June 30, 2021

Do Not Publish