**AFFIRMED as MODIFIED and Opinion Filed December 23, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00185-CR**
**No. 05-20-00186-CR**

**DANIEL ARTURO CONTRERAS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F16-75561-H & F18-76586-H**

# MEMORANDUM OPINION ON REHEARING

Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Goldstein

On November 1, 2021, this Court issued its memorandum opinion affirming as modified the trial court's judgments. On November 9, 2021, appellant Daniel Arturo Contreras filed a motion for rehearing seeking additional modifications to the trial court's judgment and bill of costs in the solicitation case. We requested a response from the State and, in its response, the State agreed to the additional modifications. We grant the motion for rehearing, withdraw our November 1, 2021

memorandum opinion, and vacate our judgments of the same day. This is now the opinion of the Court.

Following a bench trial, Appellant was convicted of sexual assault of a child and solicitation to commit capital murder. *See* TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), 15.03(a), 19.03(a)(3). Appellant raises seven issues on appeal. In his first two issues, he contends that he received ineffective assistance of counsel. In his remaining issues, he asks us to modify the judgments to remove certain court costs and fees and to reflect that there was no plea bargain agreement. We modify the trial court's judgments and affirm the judgments as modified.

**BACKGROUND**

On April 7, 2016, one of Appellant's nephews, RD, went to Appellant's house to visit his cousins and stay the night. After watching a movie with one of his cousins and her live-in partner, RD went to Appellant's room to sleep. Appellant was already in bed. After climbing into bed, RD put his arm and leg on Appellant to get comfortable. RD testified that while he was in this position, Appellant reached back and touched RD's penis, first outside, then inside of RD's shorts. RD turned around to face away from Appellant, after which he felt Appellant's finger touch and penetrate his anus. He also felt Appellant's penis touching his butt and moving around, but it did not "go inside." The next day, RD told his mother about the

incident, and she contacted the police. Appellant was arrested and charged with sexual assault of a minor. He was released on bond pending trial.

After multiple settings and court appearances, trial was scheduled for September 26, 2018. On September 11, 2018, the police received a call from Juan Aguilar, an acquaintance of Appellant's. Aguilar told the police that Appellant called him earlier in the day about "a job" and the two met in person that afternoon. According to Aguilar, Appellant told him about the sexual assault case, claimed RD was lying, and said he was about to go to prison. Aguilar testified that Appellant offered him "seven to eight thousand dollars" to kill RD. Aguilar told the police that Appellant gave him a gun wrapped in a white t-shirt, showed him where RD lived, and told him to "make it [look like] a robbery."

The police arrived at Aguilar's house the next day and took possession of the gun and t-shirt. A forensic investigation revealed that DNA on the t-shirt matched Appellant's DNA but made no conclusive findings about the gun. Cell phone records confirmed that Appellant called Aguilar on September 11, 2018. Surveillance footage from a nearby gas station showed Appellant and Aguilar together, and cell-tower data placed Appellant and Aguilar near RD's home. Appellant was arrested and charged with solicitation to commit capital murder. Investigators obtained a search warrant for Appellant's cell phone, and the subsequent search revealed that

at least one call between Appellant and Aguilar had been deleted from the phone's call log. The cell phone also contained images of child pornography.

The trial court found Appellant guilty on both charges and sentenced him to twenty years' confinement on the charge for sexual assault of a child and thirty-five years' confinement on the charge for solicitation of capital murder, to run concurrently. This appeal timely followed.

## DISCUSSION

### I. INEFFECTIVE ASSISTANCE

In his first two issues, Appellant complains he was deprived of his Sixth Amendment right to effective assistance of counsel. He argues that his trial counsel failed to investigate and present mitigating evidence pertaining to Appellant's medications and mental illness.

### A. Applicable Law

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The proper standard for determining claims of ineffective assistance under the Sixth Amendment is the two-pronged standard adopted by the United States Supreme Court in *Strickland*. *Jackson v. State*, 877 S.W.2d 768, 770–71 (Tex. Crim. App. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The two prongs are "deficient performance" and "sufficient

prejudice." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to satisfy either prong under *Strickland* is fatal to an ineffective-assistance claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Under the performance prong, the defendant must show by a preponderance of the evidence that his counsel was ineffective. *Thompson*, 9 S.W.3d at 813. We examine the totality of representation to determine whether the defendant received effective assistance. *Id.* Our review of counsel's representation is highly deferential; we presume that counsel's conduct fell within a wide range of reasonable representation. *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013). We do not judge counsel's strategic decisions in hindsight, and we strongly presume counsel's competence. *Rubio v. State*, 596 S.W.3d 410, 426 (Tex. App.—Dallas 2020, pet. granted). We will not speculate to find defense counsel ineffective. *Id.* We will inquire into counsel's trial techniques only when there appears to be no plausible basis in strategy or tactics for counsel's actions. *Villa*, 417 S.W.3d at 463.

One necessary facet of professional assistance is the investigation of the facts and law applicable to a case. *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013) (citing *Strickland*, 466 U.S. at 691; *Ex parte Imoudu*, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009)). Counsel has a duty in every case to make a reasonable investigation or a reasonable decision that an investigation is unnecessary. *Id.* When assessing the reasonableness of an attorney's investigation, a reviewing court must

consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further. *Id.* (quoting *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006)). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Ex parte Garza*, 620 S.W.3d 801, 806 (Tex. Crim. App. 2021) (quoting *Wiggins v. Smith*, 539 U.S. 510, 123 (2003)); *see also Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990) ("Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum.").

Under the sufficient-prejudice prong, the defendant must show that counsel's deficient performance prejudiced the defense. *Jackson*, 877 S.W.2d at 771. To meet this burden, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### B. Application of Law to Facts

Appellant contends his trial counsel was ineffective for failing to investigate Appellant's history of schizophrenia and the medications he was taking to treat that

illness. Had counsel done the proper investigation, Appellant argues, the resulting evidence could have led to his acquittal or reduced his sentence.

### 1. Deficient Performance

With respect to the first *Strickland* prong, we cannot determine on this record whether Appellant's trial counsel rendered constitutionally deficient representation. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). The defendant must produce record evidence sufficient to overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. *Strickland*, 466 U.S. at 689; *Villa*, 417 S.W.3d at 463. When the record contains no evidence of the reasoning behind the trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 772. "[A] reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective-assistance claim because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The record on direct appeal will generally "not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard" because "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Rylander v. State*, 101

S.W.3d 107, 110 (Tex. Crim. App. 2003) (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). "[T]rial counsel should ordinarily be given an opportunity to explain his actions before being denounced as ineffective." *Id.* at 111; *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).

Because this is a direct appeal in which Appellant's trial counsel never testified regarding his trial strategy, Appellant's claim of ineffective assistance would ordinarily be foreclosed. *Mata*, 226 S.W.3d at 430; *Rylander*, 101 S.W.3d at 110. Appellant contends, however, that such testimony is not required because the record already contains the necessary evidence of his trial counsel's actions. During closing argument, Appellant's counsel stated:

> I'd like the Court to take, also, into account [Appellant's] medical conditions. He's made reference to schizophrenia and that type of thing. Judge, I haven't gotten a good handle on that, but I want the Court to know that it appeared to me at all times that he understood what was going on. He's had some memory lapses, but that's about it. He has been cooperative.

Appellant argues that his counsel's admission of not having "a good handle" on his schizophrenia "can only be interpreted one way," namely, that counsel had "failed to do the necessary investigation to understand the nature of Appellant's medications and mental illness and any implications it could have on Appellant's behavior and

reactions to events and circumstances."[1] In order to meet his burden to prove ineffective assistance, Appellant must show not only that his counsel's investigation was incomplete, but also that counsel's decision to discontinue the investigation was unreasonable. *See Garza*, 620 S.W.3d at 806 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). The record is silent on the nature and extent of counsel's investigation into Appellant's mental illness and medications, much less counsel's reasons for the amount of investigation he conducted.[2] Absent such evidence, we cannot conclude that Appellant has overcome the presumption that his counsel's conduct fell within the wide range of reasonable representation. *See id.*; *Villa*, 417 S.W.3d at 463. We conclude that Appellant did not meet his burden to show deficient performance under the first prong of *Strickland*.

---

[1] We note also that counsel's statement that he lacked "a good handle" on Appellant's history of schizophrenia was made in closing argument. Counsel's statements during closing argument are not evidence. *See Hutch v. State*, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996) *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703, 704 (Tex. Crim. App. 2013). We do not consider incompetent evidence when determining whether a defendant has met his burden to prove ineffective assistance by a preponderance of the evidence. *See Weeks v. State*, 894 S.W.2d 390, 392 (Tex. App.—Dallas 1994, no pet.) (burden to prove ineffective assistance must be met with "competent evidence").

[2] To the extent Appellant contends that his trial counsel failed to do *any* investigation into his mental health and medications, the record does not support Appellant's contention. In a pre-trial motion to set bond filed a year before trial, Appellant's counsel explained that Appellant had been diagnosed with schizophrenia at "Metro Care Center" and was not being given the proper medication in jail. At the hearing on that motion, and again at trial, counsel elicited testimony from Appellant and his relatives about Appellant's medications.

### 2.    *Prejudice*

Even if Appellant met his burden to prove deficient performance, the record does not support a finding of prejudice. Appellant argues that his counsel's deficient performance prejudiced him both in the determination of his guilt and in the assessment of his punishment. On review, our analysis of prejudice under *Strickland* depends on which aspect of the trial proceeding is being challenged. *See LaHood*, 401 S.W.3d at 52 ("The Supreme Court's prejudice standard in a *Strickland* analysis is flexible and must be applied in many different contexts."). When a defendant asserts that his counsel's deficient performance likely affected a finding of guilt, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Johnson v. State*, 624 S.W.3d 579, 587 (Tex. Crim. App. 2021). When a defendant asserts that the deficient performance likely affected his punishment, the question is "whether there is a reasonable probability that, absent the errors, the sentencer would have assessed a more lenient punishment." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018).

With respect to the trial court's finding of guilt, Appellant argues that his trial counsel's failure to investigate his mental health background led to a dearth of trial evidence about what medications he was taking, the side effects of the medications, and the effects of schizophrenia on a person's mental state. Such evidence, Appellant

–10–

argues, would have bolstered his credibility when he explained "what happened with RD and his response to the situation, and his testimony regarding his interaction with Aguilar."[3] We reject Appellant's argument because it requires us to speculate as to what information would have been available to the trial court had Appellant's counsel further investigated Appellant's medical history. In determining the likelihood that the outcome of trial would have been different but for counsel's errors, we must "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Martinez*, 195 S.W.3d at 730. It is incumbent on Appellant to present us with a record that contains the "available mitigating evidence" that his counsel failed to uncover and present to the trial court. *See Ex parte Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012). We are not presented with such a record, and we are not authorized to speculate as to what it might contain. *See Rubio*, 596 S.W.3d at 426; *see also Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) ("If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence. Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.'").

---

[3] Even if further evidence of Appellant's medical history would have bolstered his testimony about what happened with RD, Appellant does not explain how such evidence would have lent credibility to his testimony regarding his interaction with Aguilar. The only side effect of his medication that Appellant testified to at trial was that it causes him to fall into a deep sleep.

With respect to punishment, Appellant argues that if his trial counsel would have done the necessary investigation into Appellant's mental health, he could have provided the trial court with specific evidence to consider in determining what punishment to assess. However, the evidence of Appellant's mental condition and medications was already before the trial court, and there is no indication that the court discredited that evidence. Appellant testified that on the night RD climbed into bed with him, he had taken medication that causes him to fall into a deep sleep. He claimed that he woke up only when RD touched him, at which point he left the bed to sleep on the sofa. To the extent that an unspecified investigatory scope of Appellant's medical history would have yielded more specific evidence of Appellant's schizophrenia or the side effects of his medication, we cannot say that there is a reasonable probability that the trial court would have assessed a lighter punishment on the sexual assault conviction. *See Martinez*, 195 S.W.3d at 731 (Because the jury was privy to some of the severe abuse applicant suffered during his childhood, there is not a reasonable probability that the unadmitted alleged mitigating evidence would have tipped the scale in applicant's favor, despite the omitted mitigating evidence about his abuse being "strong."). We conclude that Appellant has not shown that the evidence he believes should have been developed "differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented" at trial. *See id.*

Even if Appellant had made the necessary showing of prejudice with respect to the sexual assault charge, there is no indication in the record that Appellant's mental health or medication were relevant to the charge for solicitation of capital murder. Appellant did not testify that he was suffering from adverse effects of his medication during his meeting with Aguilar. As such, we cannot conclude that further evidence of his schizophrenia or medication would have had any effect on the trial court's assessment of punishment on the charge for solicitation to commit capital murder. The trial court found Appellant guilty of both charges and assessed punishment at twenty years on the sexual assault charge and thirty-five years on the solicitation charge to run concurrently. Even if we were to determine that additional evidence of Appellant's mental health history and medications might have impacted his punishment on the sexual assault charge, he has not shown that there was a reasonable probability that the "outcome of the proceeding"—a thirty-five year sentence on the charge for solicitation of capital murder—would have been different. *See Jackson*, 877 S.W.2d at 771.

As the record on direct appeal does not affirmatively establish both deficient performance and prejudice, we overrule Appellant's first and second issues. *See Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 892–93.

## II. MODIFICATION OF THE JUDGMENT

In his remaining issues, Appellant asks us to modify the judgment to remove court costs in the sexual assault judgment as duplicative, to remove the time payment fee imposed by the trial court as unconstitutional, and to reflect that there was no plea bargain agreement. The State agrees to some modifications but not others. This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified"). We address each modification issue in turn.

### A. Court Costs

Appellant argues that we should modify the judgment of conviction for sexual assault of a child to remove duplicate court costs. The State agrees and further contends that we should also remove certain costs from both judgments on the grounds that they were not authorized. The costs and fees assessed against Appellant in each bill of costs are as follows[4]:

---

[4] These amounts were set forth in a bill of costs for each case. Each bill of costs had an additional $25 charge that does not appear in the corresponding judgments. That difference, listed here as "Installment Plan," is the subject of Appellant's fourth and fifth issues, which we address in the next section.

|                          | Sexual Assault Case Costs ($) | Solicitation Case Costs ($) |
| ------------------------ | ----------------------------- | --------------------------- |
| Description              |                               |                             |
| Consolidated State Fees  | 185.00                        | 185.00                      |
| Clerk's Fee              | 40.00                         | 40.00                       |
| Jury Fee                 | 1.00                          | 1.00                        |
| CDC Technology Fee       | 4.00                          | 4.00                        |
| Court House Security Fee | 10.00                         | 10.00                       |
| County Records Management| 25.00                         | 25.00                       |
| Specialty Court          | 25.00                         | 25.00                       |
| Child Abuse Prevention Fund | 100.00                     | N/A                         |
| DNA Fee                  | 250.00                        | 50.00                       |
| Installment Plan         | 25.00                         | 25.00                       |
| Total                    | 665.00                        | 365.00                      |

We begin with the parties' contentions about duplicate costs. The Texas Code of Criminal Procedure requires that a judgment of conviction order the defendant to pay court costs. *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (citing TEX. CODE CRIM. PROC. ANN. arts. 42.15, 42.16). Only statutorily authorized court costs may be assessed. *Id.* Where a criminal defendant is convicted of two or more offenses in the same action, the trial court may assess each court cost or fee only once and it must be for the highest category of offense for which the defendant was convicted. TEX. CODE CRIM. PROC. ANN. art. 102.073. Here, Appellant was convicted of two offenses and was assessed costs in both. We agree that certain costs should have been taxed against Appellant only in the higher offense of solicitation to commit capital murder. *See* TEX. PENAL CODE ANN. §§ 15.03(a) (classifying solicitation of capital murder as a first-degree felony), 22.011(f) (classifying sexual

assault of a child as a second-degree felony). We modify the judgment in the sexual assault case to remove the duplicate costs.

The State contends that we should also remove the DNA-testing costs from both judgments and remove the costs for the child abuse prevention fund from the sexual assault judgment. The State's argument is based on recent changes to the law governing court costs and fees. In 2019, the Legislature overhauled the system of court costs for criminal cases. *See* Act of May 23, 2019 [Cost Act[5]], 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982. Among other things, the Cost Act raised the amount of certain costs, consolidated others, repealed some costs altogether, and recategorized certain costs as fines. Relevant here, the Cost Act repealed article 102.020 of the Code of Criminal Procedure, which required the assessment of costs for DNA testing in certain criminal cases. *See id.* § 1.19(7). The Cost Act also amended article 102.0186 of the Code of Criminal Procedure, which previously required the assessment of costs for certain sexual assault convictions to be paid into a child-abuse-prevention fund. The Cost Act recategorized those costs as fines. *See id.* § 2.39.

---

[5] The full name of the act as originally introduced in the Senate was "an Act relating to the consolidation and allocation of state criminal court costs; increasing the amount of certain court costs and reducing the amounts of certain other court costs." *See* Tex. S.B. 346, 86th Leg., R.S. (2019). We refer to the act as the "Cost Act" for ease of reference.

The State contends that the trial court was not authorized to impose DNA-testing costs or costs for the child abuse prevention fund because there was no statutory basis for them at the time of Appellant's conviction. The Cost Act took effect on January 1, 2020. *See id.* § 5.05. With respect to its effective date, the Cost Act provides:

> SECTION 5.01. Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

*Id.* § 5.01. Although the offenses in this case were committed prior to January 1, 2020, the State contends that this provision is superseded by section 51.608 of the Government Code, which provides:

> Notwithstanding any other law that establishes the amount of a court cost collected by the clerk of a district, county, or statutory county court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed, the amount of a court cost imposed on the defendant in a criminal proceeding must be the amount established under the law in effect on the date the defendant is convicted of the offense.

TEX. GOV'T CODE ANN. § 51.608. Reading these two provisions together, the State argues that Appellant is subject to fees and fines that were in effect when he committed the offenses, but he is subject to costs that were in effect when he was convicted, including the changes made by the Cost Act.

We disagree that either the Cost Act or section 51.608 of the Government Code affects the assessment of costs in this case. When the language of a statute is unambiguous, we give effect to the plain meaning of the words unless doing so would lead to absurd results. *Clark v. State*, 994 S.W.2d 166, 168 (Tex. Crim. App. 1999). Section 51.608 unambiguously states that costs must be based on the law "in effect" at the time of conviction. In turn, section 5.01 of the Cost Act provides that the law in effect when the offense was committed "continue[s] in effect" even after the Cost Act's effective date. Although the Cost Act repealed DNA-testing costs and recategorized child-abuse-prevention costs as fines, neither of those changes applies here because Appellant committed the offenses in this case in 2016 and 2018. *See, e.g.*, *Hayes v. State*, No. 12-20-00222-CR, 2021 WL 1418400, at *2 (Tex. App.— Tyler Apr. 14, 2021, no pet.) (mem. op., not designated for publication) (costs imposed by the Cost Act do not apply where offense was committed prior to January 1, 2020); *Groves v. State*, No. 07-21-00006-CR, 2021 WL 2908677, at *7 (Tex. App.—Amarillo July 9, 2021, pet. ref'd) (mem. op., not designated for publication) (same). Because the $250 DNA-testing cost and the $100 child-abuse-prevention cost were authorized by statutes in effect at the time Appellant committed the offenses in this case, we decline to modify the sexual assault judgment to remove them.

The State argues in the alternative that even if the Cost Act had not repealed the DNA-testing costs, the trial court still should not have assessed a DNA-testing cost in the solicitation case. We agree. Former article 102.020 of the Code of Criminal Procedure provided that a person must pay $50 in court costs "on conviction of an offense described by Section 411.1471(a)(3), Government Code." TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(2) (repealed by Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982). At the time of the offenses in this case, section 411.1471(a)(3) of the Government Code generally applied to offenses under Title 5 of the Penal Code, which includes capital murder. *See* TEX. GOV'T CODE ANN. § 411.1471(a)(3) (recodified as TEX. GOV'T CODE ANN. § 411.1471(a)(2) by Act of May 22, 2019, 86th Leg., R.S., ch. 1285, 2019 Tex. Gen. Laws 3798). Here, however, Appellant was convicted of solicitation to commit capital murder, not capital murder itself. *See* TEX. PENAL CODE ANN. § 15.003(a), (d)(1). Inchoate offenses such as solicitation are codified under Title 4 of the Penal Code and are therefore exempt from the DNA-testing cost imposed by former article 102.020. Accordingly, we modify the solicitation judgment to remove the DNA-testing cost.

**B.    Time-Payment Fee**

In his fourth and fifth issues Appellant asserts that the $25 time-payment fee taxed against him in both cases—identified in the chart above as "Installment Plan"

costs—should be stricken as unconstitutional. At the time Appellant committed the offenses in this case, section 133.103 of the Local Government Code provided for a $25 fee to be imposed on any person convicted of a misdemeanor or felony who paid any part of the fines, fees, or court costs assessed against him on or after the thirty-first day following the date of judgment. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(a) (amended and recodified at TEX. CODE CRIM. PROC. ANN. art. 102.030). The statute required the time-payment fee to be allocated in three ways: subsection (b) directed that 50% was to be sent to the comptroller for deposit in the general revenue fund; subsection (c) stated that 10% was to be deposited in the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice in the county or municipality"; and subsection (d) stated the remaining fees (40%) were to be deposited in the general revenue account of the county or municipality. *See id.* § (b)–(d).

In *Ovalle v. State*, on which Appellant now relies, we held that the allocation of 90% of time-payment fees into general revenue funds under subsections (b) and (d) violated the separation-of-powers provision of the Texas Constitution. *See* 592 S.W.3d 615, 618 (Tex. App.—Dallas 2020), *vacated*, No. PD-0127-20, 2021 WL 1938672 (Tex. Crim. App. May 12, 2021). Relying on the Texas Court of Criminal Appeals' holding in *Salinas v. State*, we concluded that allocating 90% of the time-payment fee into general revenue funds "turn[ed] the courts into tax gatherers" and

"impermissibly delegate[d] to the courts a power more properly attached to the executive branch." *See id.* (citing *Salinas v. State*, 523 S.W.3d 103, 107 (Tex. Crim. App. 2017)). *Ovalle* was appealed to the court of criminal appeals, along with several other cases from across the state holding the time-payment fee unconstitutional. In May 2021, while this appeal was pending, the court of criminal appeals issued its opinion in *Dulin v. State*, in which the Court held:

> The pendency of an appeal stops the clock for purposes of the time payment fee. Consequently, the assessment of the time payment fees in Appellant's case is premature, and the fees should be struck in their entirety, without prejudice to them being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes.

620 S.W.3d 129, 133 (Tex. Crim. App. 2021). The Court declined to reach the question of the statute's constitutionality. *See id.* at 133 n.29 (explaining that courts should avoid the adjudication of constitutional issues if the case can be resolved on other grounds). In a separate opinion, the Court vacated our judgment in *Ovalle* and remanded the case to us to determine whether, in light of *Dulin*, the time-payment fee should be stricken in its entirety. *Ovalle v. State*, No. PD-0127-20, 2021 WL 1938672, at *1 (Tex. Crim. App. May 12, 2021). On remand, we determined that the entire time-payment fee should be stricken as premature and modified the judgment accordingly. *Ovalle v. State*, No. 05-19-00136-CR, 2021 WL 3377873, at *2 (Tex. App.—Dallas Aug. 3, 2021, no pet.).

The State argues that we cannot impose the same remedy here because the time-payment fees in this case appear only on the bills of costs and not in the judgments. According to the State, our authority to modify a judgment does not extend to a bill of costs. *See* TEX. R. APP. P. 43.2 (allowing a court of appeals to affirm, modify, reverse, or vacate a judgment). We disagree. "[W]e are authorized on direct appeal to order a modification of a bill of costs independent of finding an error in the trial court's judgment." *See Bryant v. State*, No. 10-18-00352-CR, 2021 WL 3191937, at *2 (Tex. App.—Waco July 28, 2021, no pet.) (modifying the bill of costs to remove the time-payment fee after remand from the court of criminal appeals in light of *Dulin*); *see also Dority v. State*, No. 11-19-00236-CR, 2021 WL 3087479, at *11 (Tex. App.—Eastland July 22, 2021, no pet.) ("When the trial court clerk erroneously includes fees as court costs, we should modify the bill of costs to remove the improperly assessed fees."). Accordingly, we modify the bill of costs in each case to remove the $25 time-payment fees. We do not reach Appellant's constitutional complaints.

### C.     Other Modifications

In his sixth and seventh issues, Appellant argues that we should modify the judgment to reflect that there was no plea bargain agreement. The State agrees. The Code of Criminal Procedure requires that the judgment accurately reflect the terms of any plea bargain. *See* TEX. CODE CRIM. PROC. art. 42.01(20). The record reflects

that Appellant declined the State's plea bargain offer. We therefore sustain Appellant's sixth and seventh issues and modify the judgments to reflect that there was no plea bargain agreement.

We note also that the solicitation judgment lists the wrong statute for the offense Appellant was convicted of. The Code of Criminal Procedure requires that the judgment accurately reflect the offense or offenses for which the defendant was convicted. *See* TEX. CODE CRIM. PROC. art. 42.01(13). Here, the judgment states that the "Statute for Offense" is "19.03(A)(3) Penal Code." That statute refers to capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(3). Appellant was convicted of solicitation to commit capital murder. Criminal solicitation is codified at section 15.03(a) of the Penal Code. *See* TEX. PENAL CODE ANN. § 15.03(a). Neither party raised this issue, but we have a duty to modify the judgment to make the record speak the truth, "and such duty is not dependent upon a request by either party." *See Asberry*, 813 S.W.2d at 531. We therefore modify the solicitation judgment on our own motion to reflect that Appellant was convicted under Section 15.03(a) of the Penal Code. *See Goerdel v. State*, No. 05-19-00389-CR, 2020 WL 5814484, at *1 (Tex. App.—Dallas Sept. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (modifying judgment to reflect conviction under solicitation statute rather than statute for the underlying offense).

**D. Modifications on Rehearing**

For the first time in his motion for rehearing, Appellant asks us to further modify the solicitation judgment to reflect court costs in effect prior to the effective date of the Cost Act. Although we have the discretion to do so, we are "not required to entertain a new argument from an appellant . . . for the first time on rehearing." *State v. Gobert*, 275 S.W.3d 888, 891 (Tex. Crim. App. 2009); *see also Hughes v. State*, 878 S.W.2d 142, 151 (Tex. Crim. App. 1992) (op. on reh'g) ("[T]here are times when, 'as justice requires' or 'in the interest of justice,' an appellate court may consider a supplemental brief or a motion for rehearing to decide an issue not presented in the original briefs."). We generally decline to exercise that discretion because "[p]resentation of points of error in a piecemeal fashion is inimical to the interests of orderly appellate procedure and judicial economy." *Adams v. State*, 843 S.W.2d 174, 176 (Tex. App.—Dallas 1992, no pet.). However, this case presents us with a rare set of facts we believe justify our exercise of discretion to consider Appellant's motion. First, ordinary error-preservation rules do not apply; a criminal defendant is not required to object to the bases for costs assessed against him in the trial court and may raise the issue for the first time on appeal. *Johnson*, 423 S.W.3d at 391; *see also id.* at 390. ("Court costs are not part of the guilt or sentence of a criminal defendant; nor must they be proven at trial; rather, they are a 'nonpunitive recoupment of the costs of judicial resources expended in connection with the trial

of the case.'"). Second, the State agrees with Appellant and urges us to grant his requested relief. And third, we could have resolved the issue *sua sponte* in our original opinion, as we did above with the issue regarding the statute of Appellant's conviction for solicitation to commit capital murder. *See Asberry*, 813 S.W.2d at 531. Indeed, our duty to reform judgments to make the record speak the truth is exercised in the aid of judicial economy, not in contravention of it. *See id*. Where, as here, the State concedes the error, we serve neither the interest of justice nor judicial economy by sending the parties back to the trial court to resolve the issue, potentially opening the door to further error and another appeal. *See id.* ("For an appellate court to ignore its duty to correct the record to speak the truth when the matter has been called to its attention by any source, and when it has the necessary data to do so, and to force a later nunc pro tunc proceeding in the trial court ensuring the possibility of another appeal in the same case, as happened here, does nothing to aid judicial economy."). We will therefore consider the merits of Appellant's motion for rehearing.

As previously mentioned, the Cost Act overhauled the statutory cost scheme in criminal cases. Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982. Relevant here, the Cost Act increased the state consolidated fee from $133.00 to $185.00. *See id.* § 1.03 (amending TEX. LOCAL GOV'T CODE ANN. § 133.102(a)). The Cost Act also created a new "Local Consolidated Fee," which

combined previously authorized costs, plus two new costs, into one section of the Local Government Code. *See id.* § 1.05 (enacting TEX. LOCAL GOV'T CODE ANN. § 134.101). The table below compares costs under the new and old laws.

| Description | Fees Authorized by the Cost Act[6] ($) | Fees Formerly Authorized[7] ($) |
|---|---|---|
| State Consolidated Fee | 185.00 | 133.00 |
| Local Consolidated Fee | | N/A |
|    Clerk's fee | 40.00 | 40.00 |
|    Jury fee | 1.00 | N/A |
|    Technology fee | 4.00 | 4.00 |
|    Courthouse security fee | 10.00 | 5.00 |
|    County records mgmt. fee | 25.00 | 25.00 |
|    Specialty court fee | 25.00 | N/A |
| Total | 290.00 | 207.00 |

Here, Appellant was charged the Cost Act amounts we have already held do not apply to Appellant's conviction. Under the statutes in effect at the time Appellant committed solicitation to commit capital murder, the trial court was authorized to assess $207 against Appellant for that conviction. We therefore sustain Appellant's motion for rehearing and modify the solicitation judgment to remove the unauthorized costs. *See Hayes*, 2021 WL 1418400, at *2.

---

[6] We note that section 134.101 lists percentages, not dollar amounts. For example, the allocation for the clerk of the court account is "38.0953 percent" of the $105 total, or $40.000065. *See* TEX. LOCAL GOV'T CODE ANN. § 134.101. Rounding off the few thousandths of a penny, the fee becomes $40.00. For ease of reference and comparison, we list the dollar amounts here.

[7] The Clerk's Fee and County Records Management Fee were authorized by article 102.005(a) of the Code of Criminal Procedure, which the Cost Act repealed. The Court House Security Fee was authorized by article 102.017 of the Code of Criminal Procedure, which, was amended, and the cost increased from $5.00 to $10.00, by the Cost Act. The CDC Technology Fee was authorized by article 102.0169 of the Code of Criminal Procedure, which was amended by the Cost Act, though the $4.00 charge remained the same. Finally, the Jury Fee and Specialty Court Fee were newly added by the Cost Act.

# CONCLUSION

We conclude that Appellant failed to show that his counsel rendered ineffective assistance and overrule his first and second issues. We partially sustain Appellant's remaining issues and modify the judgments and bills of costs as follows:

1. In the judgment in Cause No. F16-75561-H: (i) we remove the words "20 YEARS TDC - $0.00 FINE" from the space beneath "Terms of Plea Bargain"; and (ii) we remove "$640.00" from the space beneath "Court Costs" and insert "$350.00" in its place.

2. We remove the following charges from the bill of costs in Cause No. F16-75561-H: (i) CLK $40.00, (ii) JURY $1.00, (iii) TECH $4.00, (iv) CHSF $10.00, (v) CCC $185.00, (vi) CCRM $25.00, and (vii) IP PLN $25.00. We further modify the "Amount Assessed," the "Unpaid Balance," and the "Adjusted Balance" of said bill of costs by removing the amount "$665.00" and replacing it with "$350.00."

3. In the judgment in Cause No. F18-76586-H: (i) we remove the words "19.03(A)(3) Penal Code" from the space beneath "Statute for Offense" and insert the words "15.03(a) Penal Code" in their place; (ii) we remove the words "35 YEARS TDC - $0.00 FINE" from the space beneath "Terms of Plea Bargain"; and (3) we remove "$340.00" from the space beneath "Court Costs" and insert "$207.00" in its place.

4. We remove the following charges from the bill of costs in Cause No. F18-76586-H: (i) JURY $1.00, (ii) SPC $25.00, (iii) DNAF2 $50.00, and (iv) IP PLN $25.00. We modify the charge for CCC by removing the amount $185.00 and replacing it with $133.00. We modify the charge for CHSF by removing the amount $10.00 and replacing it with $5.00. We modify the "Amount Assessed," the "Unpaid Balance," and the "Adjusted Balance" of said bill of costs by removing the amount "$365.00" and replacing it with "$207.00."

As modified, we affirm the trial court's judgments.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
200185HF.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL ARTURO CONTRERAS, Appellant

No. 05-20-00185-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F16-75561-H. Opinion delivered by Justice Goldstein. Justices Molberg and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **REMOVE** the words "20 YEARS TDC - $0.00 FINE" from the space beneath "Terms of Plea Bargain"; and

We **REMOVE** "$640.00" from the space beneath "Court Costs" and **INSERT** "$350.00" in its place.

Additionally, the trial court's bill of costs is **MODIFIED** as follows:

We **REMOVE** the following charges: (i) CLK $40.00, (ii) JURY $1.00, (iii) TECH $4.00, (iv) CHSF $10.00, (v) CCC $185.00, (vi) CCRM $25.00, and (vii) IP PLN $25.00; and

We **REMOVE** the amount "$665.00" from the entries for "Amount Assessed," "Unpaid Balance," and "Adjusted Balance" and **INSERT** "$350.00" for each entry.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 23, 2021

–29–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL ARTURO CONTRERAS, Appellant

No. 05-20-00186-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F18-76586-H. Opinion delivered by Justice Goldstein. Justices Molberg and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> We **REMOVE** the words "19.03(A)(3) Penal Code" from the space beneath "Statute for Offense" and **INSERT** the words "15.03(a) Penal Code" in their place;

> We **REMOVE** the words "35 YEARS TDC - $0.00 FINE" from the space beneath "Terms of Plea Bargain"; and

> We **REMOVE** "$340.00" from the space beneath "Court Costs" and **INSERT** "$207.00" in its place.

Additionally, the trial court's bill of costs is **MODIFIED** as follows:

> We **REMOVE** the following charges: (i) JURY $1.00, (ii) SPC $25.00, (iii) DNAF2 $50.00, and (ii) IP PLN $25.00;

> We **REMOVE** the amount $185.00 from the entry for "CCC" and **INSERT** $133.00 in its place;

> We **REMOVE** the amount $10.00 from the entry for "CHSF" and **INSERT** $5.00 in its place; and

We **REMOVE** the amount "$365.00" from the entries for "Amount Assessed," "Unpaid Balance," and "Adjusted Balance" and **INSERT** "$207.00" for each entry.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 23, 2021