In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00405-CR
_____

**EX PARTE ROZELL ANDRE RANDALL**

**On Appeal from the County Court at Law**
**Orange County, Texas**
**Trial Cause No. C113268**

**MEMORANDUM OPINION**

In two points of error, Appellant Rozell Andre Randall ("Randall") challenges the trial court's denial of his application for writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.072. Specifically, Randall complains that he received "constitutionally ineffective assistance of trial counsel at his plea hearing," and that the trial court "erred in becoming a fact witness at the hearing [on his habeas petition]."

The trial court denied the writ but neither dismissed Randall's application as frivolous nor made findings of fact and conclusions of law as required by the Texas Code of Criminal Procedure. *See id.* art. 11.072, § (7)(a). We therefore abated

1

Randall's appeal and remanded the case to the trial court to clarify its order denying Randall's application for writ of habeas corpus in compliance with the Texas Code of Criminal Procedure. *See id.* We also directed the parties to file supplemental briefs after receiving the trial court's findings of fact and conclusions of law. The trial court entered its Order Clarifying Denial of Writ of Habeas Corpus including its findings of fact and conclusions of law, and the parties have filed their supplemental briefs. For the reasons discussed below, we affirm the trial court's Orders denying Randall's requested relief.

## I. Background

Randall, a commercial truck driver, pleaded "guilty" to three counts of driving while intoxicated (second offense), a Class A misdemeanor. *See* Tex. Penal Code Ann. § 49.04. Pursuant to a plea-bargain agreement, the trial court sentenced Randall to serve one year in the Orange County jail, suspending the sentence for twenty-four months while Randall was on community supervision.[1]

During his plea hearing, Randall was represented by counsel. The transcript of his plea colloquy is included in the record and contains the following:

> THE COURT: Does your client waive the arraignment and reading of the information for each of these cases?
>
> [DEFENSE COUNSEL]: He does.

---

[1] The trial court also imposed a fine, a fifteen-day jail term and assessed court costs.

2

THE COURT: All right. Mr. Randall, in each of these cases to the charge of driving while intoxicated, second offense, how do you plead?

MR. RANDALL: Guilty.

THE COURT: Are you pleading guilty voluntarily, intelligently, and of your own free will?

MR. RANDALL: Yes, ma'am.

THE COURT: Court has before it for each case State's Exhibits 1 and 2; does the State offer those?[2]

THE STATE: Yes ma'am, we do; your Honor.

[DEFENSE COUNSEL]: No objection.

THE COURT: Those are admitted. Mr. Randall, did you go over all the paperwork with [DEFENSE COUNSEL] before you signed it?

MR. RANDALL: Yes.

THE COURT: Do you feel comfortable you understood it?

MR. RANDALL: Yes.

THE COURT: Did you understand the full range of punishment for these offenses?

MR. RANDALL: Yes, ma'am.

THE COURT: And did you understand the rights that you have that you are giving up by entering into plea bargains at this time?

MR. RANDALL: Yes, ma'am.

---

[2]State's Exhibit 1 consists of the Written Plea Admonishments and Defendant's Waivers and Confession and State's Exhibit 2 consists of the Agreed Punishment Recommendation.

Randall also thanked the trial court "for being lenient on my case."

The above-referenced "paperwork" includes the Agreed Punishment Recommendation, the Trial Court's Certification of Defendant's Right to Appeal (showing no right of appeal due to the plea bargain), the Trial Court's Written Plea Admonishments, and Defendant's Waivers and Confessions, which Randall signed. By signing the Waivers and Confessions, Randall acknowledged that he understood the admonishments, he was mentally competent, his plea was free and voluntary, and he was "totally satisfied with the representation of [his] attorney who provided effective and competent representation[,]" among other things.

Six months after entering his plea bargain, when the State moved to "suspend or revoke" his commercial driver's license, Randall filed an Application for Writ of Habeas Corpus. In his application, Randall claimed that his plea was "involuntary and the result of ineffective counsel []" because he did not understand "the consequences of [his] plea and the waivers he made." Specifically, Randall claimed that his previous attorney failed to advise him of the legal consequences of a second DWI conviction vis à vis his commercial driver's license and that his "mental health issues compounded by unemployment and homelessness[]" precluded him from understanding the terms of his community supervision and the consequences of his plea. Randall's habeas application also requests "expansion of the record" to include the transcript of his plea hearing, among other things. The transcript of Randall's

4

plea hearing is included in the Supplemental Reporter's Record on appeal, and an excerpt from it is recited above.

Randall, the sole witness at his habeas hearing, contended that at the time of his plea hearing, he was suffering from untreated schizophrenia, bipolar disorder, anxiety, and post-traumatic stress disorder, which prevented him from fully understanding the consequences of his plea. Randall further claimed that he did not speak at his plea hearing, that his attorney spoke for him, and that the trial court did not ask him whether he was "waiving all [his] rights voluntarily and of [his] own free will[.]" The trial court then noted having reviewed the transcript of the plea hearing, which reflected that Randall answered for himself at his plea hearing when he pleaded guilty to "driving while intoxicated, second offense[.]" The record also reflected that at the plea hearing the trial court asked Randall if he was waiving his rights voluntarily, intelligently, and of his own free will, and he answered affirmatively.

In August 2022, about two months after Randall filed his habeas application, the Community Supervision and Corrections Department ("the Department") reported multiple violations of Randall's community supervision conditions to the trial court. According to the report, Randall: missed seven monthly reports to the Department; tested positive for alcohol use; had not paid his fine or court costs; failed to perform any required community service; failed to follow the rules of his

5

in-home alcohol monitor; and failed to enroll in a repeat DWI Education Course. Based on these violations, the Department requested, and the trial court ordered, that Randall be sentenced to thirty days in the Orange County jail.

In its Order Clarifying Denial of Writ of Habeas Corpus, the trial court made the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

(1) Applicant was charged by information with three separate Driving While Intoxicated-2nd Offense (hereinafter "DWI - 2nd") cases in cause numbers Cl13268, Cl13369, and C113399.

(2) Applicant had previously been convicted of an offense relating to the operating of a motor vehicle while intoxicated in the County Court at Law No. 3 of Jefferson County, Texas, on April 11, 2017. That prior Driving While Intoxicated conviction was the basis of the subject case, as well as the two other cases, being enhanced to DWI – 2nd cases.

(3) On December 1, 2021, Applicant entered guilty pleas for all three DWI – 2nd cases, including the current case (C113268) for which Applicant has now filed an Application for Writ of Habeas Corpus.

(4) Applicant did not file an Application for Writ of Habeas Corpus for the DWI – 2nd cases in cause numbers Cl13369 and Cl13399.

(5) Applicant requested the record be expanded to include the "complaint and information, the plea papers, written admonishments, order granting community supervision, transcript of the plea hearing ..." and that he be given an evidentiary hearing. The Court reviewed the plea transcript prior to the evidentiary hearing.

(6) During his DWI – 2nd pleas, Applicant was represented by retained counsel, [DEFENSE COUNSEL]. Mr. [DEFENSE COUNSEL] was a seasoned trial lawyer and, at the time Applicant entered pleas

6

in his cases, Mr. [DEFENSE COUNSEL] had approximately thirteen years' experience and a reputation in the community for being a good and capable criminal attorney.

(7) Applicant now contends that his plea, under the present case only, was both involuntary and the result of ineffective counsel.

(8) Applicant, along with his counsel, appeared in court on December 1, 2021, and signed "Defendant's Waivers and Confession" for this case in which Applicant stipulated that he understood the admonishments listed in the document entitled "Written Plea Admonishments," he was mentally competent, his plea was freely and voluntarily entered, and he was "totally satisfied with the representation of [his] attorney who provided effective and competent representation."

(9) Applicant was specifically questioned by this Court whether he (a) was pleading guilty voluntarily, intelligently, and of his own free will, (b) was pleading guilty because he was guilty and for no other reason, (c) reviewed all the plea paperwork with his attorney prior to signing it, (d) felt comfortable that he understood the plea paperwork, (e) understood the full range of punishment for his three DWI – 2nd cases, and (f) understood the rights that he had and that he was giving up by entering into plea bargains. Applicant responded affirmatively to each question.

(10) Applicant was properly admonished during the plea hearing.

(11) Applicant's Application contained assertions that were clearly untrue. Further, Applicant was not a credible witness.

(12) There was no credible evidence that Applicant had mental health issues at the time of his pleas that kept him from fully understanding the consequences of his subject plea.

(13) Although Applicant claims he was not familiar with the criminal justice system and was not aware of how his livelihood would be affected, the Court specifically finds that Applicant was fully aware of the consequences of the subject DWI – 2nd conviction and that it would affect his livelihood.[1]

7

(14) Applicant had three separate DWI - 2nd cases pending at the time of his plea and, if tried separately, the Applicant would have been facing a maximum punishment of $18,000 in fines and 3 years in jail.[2] Instead, because of his pleas, Applicant was sentenced to 1 year confinement in the Orange County Jail, which jail time was suspended and Applicant was, instead, placed on probation for 24 months, ordered to pay a $2,400 fine, and required to serve 10 days up front jail time.[3]

(15) Based on a totality of the circumstances at the time of trial, Applicant failed to establish by a preponderance of evidence that his trial attorney was ineffective, as that term is defined by law.

(16) Based on a totality of the circumstances at the time of trial, Applicant failed to establish by a preponderance of evidence that his subject plea was not knowingly and voluntarily entered.

## CONCLUSIONS OF LAW

(1) Applicant failed to substantiate his claims by a preponderance of the evidence.

(2) Applicant received effective assistance of counsel.

(3) Applicant's subject plea was entered knowingly and voluntarily.

(4) Applicant's subject plea was entered with a full understanding that his livelihood would be affected.

The trial court's four footnotes read:

[1] Applicant had a prior DWI conviction in Jefferson County, Texas, in 2017; and, Applicant made the following comments to the Court following his guilty pleas, to wit: THE COURT: Are you getting help with your alcohol issue? MR. RANDALL: Yes, ma'am. THE COURT: It's costing you a lot of money. MR. RANDALL: Yeah, I was hoping I could get a job -- I need to get a job; you think I could work something out? THE COURT: You have a long time before everything can be completed; 24 months. MR. RANDALL: Two years; yeah. THE

8

COURT: That's awful. MR. RANDALL: Isn't there any way we can reduce it to anything lower when I complete it? MR. [DEFENSE COUNSEL]: Unfortunately DWI doesn't work that way. MR. RANDALL: I've been driving trucks for 10 years.

[2] For **each** DWI – 2nd case, Applicant faced a maximum punishment of a 12-month jail sentence and a $6,000 fine.

[3] As part of his punishment for each DWI – 2nd, Applicant was required to serve 5 days jail time for each case for a total of 15 days. Applicant was given 5 days credit towards his jail time as he had already served 5 days in jail.

[4] Applicant's other two DWI – 2nd pleas were also entered knowingly and voluntarily and with a full understanding that his livelihood would be affected.

This appeal followed the trial court's denial of relief.

## II. Issue One: Effectiveness of Plea Counsel

In his first issue, Randall claims that his attorney was ineffective for failing to investigate and inform the trial court about how Randall's mental health problems could affect the voluntariness of his plea and by failing to inform Randall of a collateral consequence of his plea: suspension or revocation of his commercial driver's license. We address these contentions separately.

## A. Standard of Review

In reviewing the trial court's denial of a habeas petition, we "must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App.

2003)); *see also Ex parte Hernandez*, 398 S.W.3d 369, 373–74 (Tex. App.—Beaumont 2013, no pet.) (discussing the evidentiary standard for ineffective assistance of counsel in the context of a habeas petition). A trial court abuses its discretion if it is acts "arbitrarily, unreasonably, or without reference to guiding principles of law in the case[,]" but does not abuse its discretion so long as its ruling lies within "the zone of reasonable disagreement." *See Ex parte Gallow*, 602 S.W.3d 605, 608–09 (Tex. App.—Beaumont 2020, no pet.) (citations omitted). In reviewing an appeal from a habeas court's ruling on an 11.072 writ, we give the habeas court almost total deference as to its findings of fact if its findings are supported by the record. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). When the habeas court has resolved the habeas proceedings based on a factual dispute turning on the habeas court's evaluation of the credibility and demeanor of witnesses, an appellate court will not overturn its ruling unless the applicant established that the habeas court abused its discretion in reaching its findings. *Id.*

**B. Applicable Law**

Article 11.072 of the Code of Criminal Procedure allows a defendant convicted and sentenced to community supervision to challenge the legal validity of his conviction by filing a writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.072, §§ 1, 2. In the habeas court, the "applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte*

*Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002) (citations omitted); *see Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995) (explaining that the applicant has the burden to prove his factual allegations by a preponderance of evidence). In a habeas proceeding where the applicant complains about ineffective assistance of counsel involving a plea bargain, he bears the burden of proving (1) his attorney's advice about the plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases, and (2) his attorney's errors affected the outcome of the process that resulted in the defendant's plea. *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). As the applicant seeking habeas relief, Randall had the burden to prove that a reasonable probability exists that, but for his attorney's alleged errors, he would not have accepted the State's plea offer and insisted instead on going to trial. *See Ex parte Harrington*, 310 S.W.3d at 458.

Under settled standards that apply to claims of ineffective assistance of counsel, the defendant must prove the attorney who represented him performed deficiently and the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Bowman*, 533 S.W.3d 337, 349 (Tex. Crim. App. 2017); *Torres*, 483 S.W.3d at 43. Courts must measure whether the attorney was ineffective using an objective standard of reasonableness, which

turns on whether the attorney represented the defendant in a manner that fell below the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Bowman*, 533 S.W.3d at 349; *Torres*, 483 S.W.3d at 43. We examine the totality of the representation in making this determination. *See Courtney v. State*, 39 S.W.3d 732, 737 (Tex. App.—Beaumont 2001, no pet.).

The evidence needed to prove an ineffective assistance claim must be based on facts firmly founded in the record from the proceeding in which the claim is made. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). The defendant who claims to have been the victim of his attorney's ineffective assistance has the burden to create that record and to show that, but for his attorney's giving him ineffective assistance, he would not have pleaded guilty. *See Strickland*, 466 U.S. at 694; *Ex parte Torres*, 483 S.W.3d at 43; *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). The defendant must prove both ineffective assistance and that, rather than pleading guilty, he would have chosen to face trial. *See Ex parte Torres,* 483 S.W.3d at 43 (citation omitted).

In short, Randall, as the habeas applicant, bore the burden of proof to establish by a preponderance of the evidence that his counsel was ineffective in one or both ways claimed. *See Ex parte Richardson*, 70 S.W.3d at 870; *see also Ex parte*

12

*LaHood*, 401 S.W.3d 45, 50–54 (Tex. Crim. App. 2013) (discussing mental health in the context of a habeas claim alleging ineffective counsel).

## C. Analysis

### 1. Randall's Mental Health

A trial court may not accept a defendant's guilty plea "unless it appears that the defendant is mentally competent, and the plea is free and voluntary." Tex. Code Crim. Proc. Ann. art. 26.13(b). A defendant is mentally competent if he has "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding;" and has "a rational as well as factual understanding of the proceedings against [him]." *Id*. art. 46B.003(a); *see also Rice v. State*, 991 S.W.2d 953, 957 (Tex. App.—Fort Worth 1999, pet. ref'd) (noting that "the test is not whether the accused labored under some mental, behavioral, or psychological impairment; rather, the critical inquiry is whether the accused had the ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him[]") (citations omitted).

If a defense attorney fails to investigate his client's apparent mental health issues, that failure may constitute ineffective assistance of counsel. *See Ex parte LaHood*, 401 S.W.3d at 50 (holding that the attorney's failure to investigate the defendant's known mental health history was constitutionally deficient

representation). If harmful, such failure could render the defendant's plea involuntary because he was not competent to enter it. *See id.* at 57 (denying the habeas relief sought because counsel's deficient performance did not prejudice the defendant). Yet a history of mental health issues alone is generally insufficient to render a guilty plea involuntary. *See Brown v. State*, 129 S.W.3d 762, 765–66 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Rice*, 991 S.W.2d at 957). Therefore, to prevail on this issue, Randall was required to prove that his counsel knew of his alleged mental health challenges, unreasonably failed to investigate them, and that he was harmed because of that failure. *See Ex parte LaHood*, 401 S.W.3d at 50–54.

We begin with the presumption that Randall, like other individuals, was competent at the time he pleaded guilty. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(b); *see also LaHood*, 401 S.W.3d at 54. Randall bore the burden to prove otherwise by a preponderance of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(b) (setting out the evidentiary standard for rebutting the presumption of competence).

In his habeas hearing, Randall was the sole witness, and offered only his own testimony that he suffered from mental health issues that affected the voluntariness of his plea because they diminished his understanding of the plea. Randall offered no other evidence, such as medical records, family members' testimony, or his

14

former attorney's affidavit, to support the claim that his mental health problems rendered his plea involuntary. *See Ex parte LaHood*, 401 S.W.2d at 50–52 (referencing medical records and reports, the applicant's father's and former wife's affidavits, and trial counsel's affidavits). As the *Brown* court stated, "[t]he naked assertion, 'I am incompetent,' unsupported by any facts or evidence, is not sufficient, by itself to require either a competency inquiry" or hearing. 129 S.W.3d at 765. The *Brown* court further observed that "[e]vidence capable of creating a bona-fide doubt about a defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source." *Id.* (citation omitted). We have none of that evidence here, but instead have only Randall's "naked assertion" that his mental health adversely affected his ability to comprehend his plea. *See id.*

The trial court's finding of fact that Randall "was not a credible witness[]" and its additional findings of fact to the effect that Randall was mentally competent at the time he "knowingly and voluntarily" pleaded guilty, are supported by the record, and we therefore give these findings "almost total deference." *Guerrero,* 400 S.W.3d at 583. Randall therefore did not overcome the presumption of competence. *See* Tex. Code Crim. Proc. Ann. art. 46b.003(b) (placing the burden of proof on the defendant seeking to rebut the presumption of competence).

Randall's gratitude to the trial court for "being lenient" underscores the trial court's finding that Randall was competent and understood his plea because it shows that he realized how the terms of his plea compared to the maximum sentence he could have received. Since Randall has not disproved his competence, we will not hold that his counsel was ineffective for failing to investigate his mental state and will not invalidate his plea on that basis.

### 2. Randall's Commercial Driver's License Suspension or Revocation

According to his habeas application, Randall was in danger of losing his commercial driver's license because of his guilty plea to a second DWI charge. He contends that his attorney provided ineffective assistance of counsel for failing to explain that a conviction for a second DWI would result in the permanent revocation of his commercial license. *See* Tex. Transp. Code Ann. § 522.081(d)(1).

Even if a defendant is unaware that a conviction could prevent him from obtaining a license necessary for future employment, it does not undermine the voluntariness of a plea. *See State v. Collazo*, 264 S.W.3d 121, 128 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (the fact that the defendant was unaware his conviction could prevent him from getting a peace officer's license did not undermine the voluntariness of his plea). That said, here the trial court found that Randall "was fully aware of the consequences of the subject DWI – 2nd conviction and that it would affect his livelihood." As Randall has not overcome the deference

16

we afford to this finding, we decline to find that he was harmed by counsel's alleged failure to specifically warn Randall about the suspension or loss of his commercial driver's license. *See Guerrero*, 400 S.W.3d at 583 (noting that we afford almost total deference to the trial court's findings of fact).

Since effective attorney representation did not require Randall's plea counsel to advise him that his commercial driver's license would be affected, and the record reflects that Randall was aware of this consequence, counsel's alleged failure to do so did not constitute ineffective representation. *See Collazo*, 264 S.W.3d at 127–28 (denying habeas relief for a conviction that would bar the applicant from certain types of employment).

We overrule Randall's first issue.

### III. Issue Two: Trial Judge's Statements

In his second issue, Randall complains that the trial court impermissibly "became a fact witness at his hearing." Randall bases this argument on the trial court's review of the plea hearing transcript and her statements based on that review.

#### A. Applicable Law

A trial judge "may not 'step down from the bench' and become a witness in the very same proceeding over which he is currently presiding." *Hensarling v. State*, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992); *see also* Tex. R. Evid. 605 (stating that "[t]he presiding judge may not testify as a witness at the trial."). A trial judge in

this type of habeas case, however, "may rely on the court's personal recollection[]" to reach its decision. Tex. Code Crim. Proc. Ann. art. 11.072 § 6(b). A trial court does not become a witness, thus violating Rule 605, by relying on "testimony and events witnessed by [her] in the courtroom . . ." and the trial judge's "recollection of the proceedings is not 'testimony.'" *Dickerson v. State*, 87 S.W.3d 632, 642 (Tex. App.—San Antonio 2002, no pet.) (citation omitted) (addressing the trial judge's recollection in the context of a recusal motion); Tex. R. Evid. 605. A trial judge likewise does not testify by "recalling . . . [her] own internal thought process." *State v. Stewart*, 282 S.W.3d 729, 736–37 (Tex. App.—Austin 2009, no pet.).

## B. Analysis

Randall argues that the trial court's reliance on the transcript of his plea hearing constitutes testimony contravening Rule 605, that it was harmful error, and that he therefore should prevail. *See* Tex. R. Evid. 605. The State responds that the trial court's explanation of the basis for her decision did "not constitute 'fact witness testimony' and [her] review of the transcript was proper." We agree with the State.

In this case, the trial court's reference to the transcript was not testimony that violated Rule 605. *See Kemp v. State*, 846 S.W.2d 289, 305, n.9 (Tex. Crim. App. 1992) (observing that Rule 605 applies only to those instances where the "trial judge would actually 'step down from the bench' to become a witness in the very same proceeding in which he is currently presiding[]"); *see also* Tex. R. Evid. 605.

18

Instead, the trial court permissibly recited Randall's plea colloquy, which happened in her presence in the courtroom. *See Dickerson*, 87 S.W.3d at 642. Explaining the reasons for her denial of Randall's requested relief by contrasting Randall's statements at his plea hearing with his testimony at his habeas hearing likewise did not violate Rule 605, since it was not testimony "as a witness at the trial" contemplated by that Rule. *See State v. Stewart*, 282 S.W.3d at 736–37; *see also Hensarling*, 829 S.W.3d at 170–71; *see also* Tex. R. Evid. 605.

Additionally, Randall invited such alleged error by requesting to "expand the record" to include this transcript. Randall therefore cannot complain on appeal that the court considered it. *See Vennus v. State*, 282 S.W.3d 70, 72–73 (Tex. Crim. App. 2009) (explaining and applying the invited error doctrine noting that it estops a party from making an appellate error of an action it induced).

We overrule Randall's second issue.

## I. Conclusion

Having overruled both of Randall's issues on appeal, we affirm the trial court's Orders.

AFFIRMED.

W. SCOTT GOLEMON<br>
Chief Justice

Submitted on August 17, 2023
Opinion Delivered August 14, 2024
Do Not Publish
Before Golemon, C.J., Wright and Chambers, JJ.